# Exhibit B

David Sanford (*pending OSAAC approval*)
dsanford@sanfordheisler.com
SANFORD HEISLER SHARP, LLP
1666 Connecticut Avenue, N.W., Suite 300
Washington, D.C. 20009
Telephone: (202) 499-5201
Facsimile: (202) 499-5119

Andrew Melzer (*pending OSAAC approval*)
amelzer@sanfordheisler.com
SANFORD HEISLER SHARP, LLP
1350 Avenue of the Americas, 31st Floor
New York, NY 10019
Telephone: (646) 402-5650
Facsimile: (646) 402-5651

Xinying Valerian (SBN 254890)
xvalerian@sanfordheisler.com
Danielle Fuschetti (SBN 294064)
dufschetti@sanfordheisler.com
SANFORD HEISLER SHARP, LLP
111 Sutter Street, Suite 975
San Francisco, CA 94104
Telephone: (415) 795-2020
Facsimile: (415) 795-2021

*Attorneys for Claimant and the Proposed Class*

**In JAMS**

| | |
|---|---|
| MARCELLA JOHNSON,<br>On Behalf of Herself and All Others<br>Similarly Situated,<br><br>**CLAIMANT,**<br><br><br>v.<br><br>ORACLE AMERICA, INC.,<br><br>**RESPONDENT.** | JAMS Ref. No. 1100087724<br><br><br>**FIRST AMENDED DEMAND FOR CLASS ARBITRATION** |

1

1    Claimant Marcella Johnson was a sales representative at Respondent Oracle
2  America, Inc. Claimant brings this Demand for Class Arbitration to recover earned but
3  unpaid commissions that Oracle wrongfully withheld from her and other similarly situated
4  sales representatives. As set forth below, Oracle engages in deceptive and unlawful
5  maneuvers to avoid paying representatives their rightful commission wages.

6    Further, Oracle arbitrarily and retroactively changed Claimant's commissions after
7  they had been earned and paid – to the point where Oracle claimed that Claimant actually
8  owed the Company twenty thousand dollars. Oracle then unlawfully compelled Claimant
9  to continue to work without receiving commissions until she paid off her so-called "debt."
10  Thus, Oracle engaged in illegal peonage (debt servitude) and forced labor practices – a
11  twenty-first century tech analog of sharecropping and the company store – prohibited by
12  federal law.

13                                **INTRODUCTION**

14    1.    Claimant Johnson, a former sales representative at Oracle, brings class
15  claims against Oracle on behalf of herself and all others similarly situated. Claimant seeks
16  to recover commission wages unlawfully withheld by Oracle in breach of Oracle's
17  contracts with its sales representatives and in violation of the California Labor Code.

18    2.    Respondent Oracle is a Fortune 100 technology giant. Oracle attracts
19  employees by offering them the opportunity to "make a difference" and help "make the
20  world a better place for everyone." But the reality does not live up to this lofty rhetoric.
21  Oracle reaps its profits on the backs of its workers by failing to honor its legal and
22  contractual obligations to compensate them fairly.

23    3.    For many years, Oracle has routinely and systematically shortchanged its
24  salesforce of their earned commission wages. Oracle does so by retroactively changing the
25  terms and conditions for calculating commissions after those commissions are earned and
26  due and sometimes even after they have been paid. As a matter of policy and practice,
27  Oracle retrospectively cancels the contractual plans and formulas under which salespeople
28  have made their sales and earned associated commissions. Oracle then replaces the

                                                                        2
_____

operative contractual terms with back-dated, less favorable provisions in order to pay the employees substantially less than what they are entitled to. In essence, if the compensation arising under a commissions contract is more than what Oracle decides it wants to pay – even well after the fact – it unilaterally disregards the contract and refuses to pay.

4.      Accordingly, Oracle engages in a classic bait-and-switch, under which the system is rigged. Oracle incentivizes its employees to make sales through promises of potentially lucrative commissions. But if they are successful in making sales on Oracle's behalf, the company might simply opt not to pay.

5.      In some instances, Oracle coerces employees into accepting retroactive adjustments to earned commissions by threatening that if they fail to accept the new commission plans within 24 hours, they will not be paid pending commissions at all.  If an employee is intrepid enough to decline, Oracle barrels ahead anyway and applies the new terms to completed past sales.

6.      As a result of these practices, Oracle frequently "claws back" previously paid commissions.  If employees cannot afford to pay back their earned commission wages, they are left with a Hobson's choice: continue to work for Oracle without commissions until the supposed "debt" is paid off or leave the company and face a collections lawsuit.

7.      Oracle has a term for retroactive changes to a commission plan: "re-plans." Re-plans are rooted in compensation policies which unlawfully provide that Oracle can reduce commissions based on opaque and secret criteria. Oracle is not transparent or upfront about the circumstances and reasons for "re-plans."

8.      Although seemingly arbitrary to the sales employees, Oracle's practices are anything but haphazard. Led by the finance department and supported by sales operations and compensation department employees, Oracle's re-plans are about one thing: retroactively defraying the company's incurred labor costs to align with its corporate financial goals. Oracle adopts systematic processes that enable it to regularly overpromise and underdeliver to its workers; over the years, Oracle has padded its bottom line with many millions of dollars in workers' earned commission wages.

3

FIRST AMENDED DEMAND FOR CLASS ARBITRATION

9.     Oracle's practices breach its contractual arrangements with sales employees. These practices further violate the California Labor Code's prohibitions on taking deductions from employees' wages to defray ordinary business costs and on secretly paying a lower wage than the one designated by contract. In addition, Oracle's practices contradict the Labor Code's requirement that commission contracts be transparent about the methods for computing and paying commissions and enable workers to fairly anticipate their actual compensation. Finally, by systematically promising employees certain commissions and using unlawful re-plans to avoid paying these commissions, Oracle engages in unfair business practices under California's Unfair Competition Law.

10.     Through this class arbitration, Claimant challenges Oracle's practice of imposing retroactive changes in commission plans that result in loss of pay. Claimant also pursues individual peonage and forced labor claims under 18 U.S.C. §§ 1581 and 1589. Claimant seeks to recover unpaid wages, waiting time penalties, reasonable attorneys' fees and costs, and all other appropriate relief to which Claimant and class members are entitled.

## THE PARTIES

11.     Claimant Marcella Johnson resides in Modesto, California. She worked for Oracle in 2013 and 2014 in Oracle's offices in Redwood City, California.

12.     Respondent Oracle is a Delaware Corporation with its corporate headquarters in Redwood City, San Mateo County, California.

13.     Oracle was and is an employer under the California Labor Code and common law.

14.     Oracle employed Claimant and other employees to perform sales work for Oracle in California. Oracle regularly failed to pay Claimant and other sales employees the earned commission wages they were entitled to under their commission contracts.

## JURISDICTION AND VENUE

15.     Ms. Johnson originally filed this action on February 14, 2017 in federal district court in the Northern District of California.

16.     Oracle filed a motion to dismiss the federal action on the ground that the

4

1    court lacked subject matter jurisdiction under the Class Action Fairness Act.

2        17.    After Ms. Johnson filed the federal action, Oracle produced Ms. Johnson's

3    personnel file. The personnel file contained an arbitration agreement.

4        18.    Judicial Arbitration and Mediation Services ("JAMS") of San Francisco has

5    jurisdiction over this class action arbitration pursuant to the Parties' written arbitration

6    agreement known as "Employment Agreement & Mutual Agreement to Arbitrate" (the

7    "Arbitration Agreement"), a copy of which is attached to this Class Action Demand as

8    Exhibit "A." By invoking arbitration, Claimant does not waive any rights and expressly

9    reserves all rights to challenge any term or provision of the Arbitration Agreement.

10       19.    The Arbitration Agreement was a non-negotiable form contract which

11   Oracle imposed on Claimant and other workers as a condition of employment.

12       20.    JAMS of San Francisco also has jurisdiction over this class arbitration and

13   Respondent Oracle pursuant to the JAMS Class Action Procedures, JAMS Employment

14   Arbitration Rules and Procedures, and JAMS Policy on Employment Arbitration Minimum

15   Standards of Procedural Fairness.

16       21.    Pursuant to the Parties' Arbitration Agreement, Claimant selects San

17   Francisco, California, as the venue where the arbitration shall be conducted.

18                              **CLASS ACTION ALLEGATIONS**

19       22.    Claimant brings this action pursuant to Rule 3 of the JAMS Class Action

20   Procedures and Fed. R. Civ. P. 23. Claimant seeks injunctive and monetary relief for

21   Oracle's systematic refusal to pay the full commissions earned by sales employees.

22   **A. Class Definition**

23       23.    The Class consists of all commissioned sales employees who have been or

24   will be employed by Oracle in California at any time from February 14, 2013 to the present,

25   to whom Oracle has issued a commission plan which is subsequently replaced by another

26   commission plan containing both a retroactive effective date and a commission formula

27   less favorable to the employee (including but not limited to higher quotas and lower

28   commission rates) in comparison to the plan that is being replaced. Class members had

5

FIRST AMENDED DEMAND FOR CLASS ARBITRATION

pending commissions payments and/or prior commission payments reduced or clawed back as a result of retroactive re-plans.

24.    Claimant is a member of the Class she seeks to represent.

25.    Claimant reserves the right to amend the class definition based on discovery or legal developments.

**B. Requirements of Federal Rule 23(a)**

**i.  Numerosity and Impracticability of Joinder**

26.    The proposed Class is so numerous that joinder of all members is impracticable.

27.    Upon information and belief, there are more than 1,000 members of the proposed Class.

28.    The Class members are readily ascertainable through Oracle's centralized and electronically maintained records.

**ii.  Common Questions of Law and Fact**

29.    The prosecution of Claimant's claims will require the adjudication of numerous questions of law and fact common to the Class. The common questions include:

a.  Whether Respondent Oracle retroactively reduced Claimant's and the class members' commission wages by applying revised, less favorable terms to prior completed sales;

b.  Whether the terms of Oracle standardized commission contracts comply with California law governing earned commission wages;

c.  Whether terms within Oracle's standardized commission contracts comply with California Labor Code Section 2751;

d.  Whether Oracle's commission policies and practices comply with California Labor Code Section 221; and

e.  Whether Oracle's commission policies and practices comply with California Labor Code Section 223.

6

FIRST AMENDED DEMAND FOR CLASS ARBITRATION

### iii. Typicality of Claims and Relief Sought

30.     Claimant has suffered the same violations and similar injuries as other Class members; these violations and injuries were caused by Respondent Oracle's common course of conduct. All Class members were subject to the same corporate policies and practices, as alleged herein, of reducing commission payments on an *ex post facto* basis.

31.     Claimant possesses and asserts each of the claims she asserts on behalf of the proposed Class. She seeks similar relief as other Class members.

### iv. Adequacy of Representation

32.     Claimant is willing and able to represent the proposed Class fairly and vigorously as she pursues her similar individual claims in this action.

33.     Claimant has retained counsel sufficiently qualified, experienced, and able to conduct this arbitration and to meet the time and fiscal demands required to pursue a class action of this size and complexity.

### C. Requirements of Rule 23(b)(2)

34.     Oracle has acted on grounds generally applicable to Claimant and the proposed Class by adopting and following systemic policies, practices, and procedures that deprive sales employees of earned commission wages. Refusal to pay all commission wages is Oracle's standard operating procedure rather than a sporadic occurrence.

35.     Oracle has acted or refused to act on grounds generally applicable to Claimant and the proposed Class. Oracle's class-wide conduct justifies the requested injunctive and declaratory relief with respect to the Class as a whole.

36.     Injunctive, declaratory, and affirmative relief are significant forms of relief sought in this case. Entitlement to declaratory, injunctive, and affirmative relief flows directly and automatically from proof of Oracle's ongoing refusal to pay all commission wages.  In turn, entitlement to declaratory, injunctive, and affirmative relief forms the factual and legal predicate for the monetary and non-monetary remedies for individual losses caused by Oracle's systemic refusal to pay full commissions.

7

### D. Requirements of Rule 23(b)(3)

37.     The common questions of law and fact predominate over any questions affecting only individual Class members. Resolution of these common questions for the class as a whole will greatly advance the efficiency purposes of class actions.

38.     A class arbitration is superior to other available means for the fair and efficient adjudication of this controversy. In particular, individual class members lack the financial resources to vigorously prosecute an action against a large corporation such as Oracle and would not be able to pursue their claims independently.

39.     Class treatment will permit a large number of similarly-situated persons to pursue their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

40.     Employees are often afraid to assert their legal rights out of fear of direct or indirect retaliation. Class proceedings allow class members to vindicate their rights while eliminating or reducing these substantial risks. Accordingly, class treatment will foster more robust and complete enforcement of the Labor Code.

41.     The pursuit of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Respondent Oracle and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.

42.     The issues in this class action can be decided by means of common, class-wide proof. In addition, this Tribunal can, and is empowered to, fashion methods to efficiently manage this action as a class action.

### E. Rule 23(c)(4) Issue Certification

43.     Additionally, or in the alternative, this Tribunal may grant "partial" or "issue" certification under Rule 23(c)(4). Resolution of common questions of fact and law would materially advance the arbitration for all Class members.

FIRST AMENDED DEMAND FOR CLASS ARBITRATION

1

### FACTS

2

**A. Oracle's Sales Commissions Policies, Practices and Procedures**

3      44.      Respondent Oracle committed the following acts knowingly, intentionally,

4  and willfully.

5      45.      The Oracle policies, practices and procedures alleged in this Class

6  Arbitration Demand existed at all relevant times, *i.e.*, going back at least to February 2013,

7  and they are continuous and ongoing.

8      46.      Typically, commission wages constitute a highly significant portion of

9  Oracle sales employees' overall compensation.

10     47.      Oracle provides each sales employee with an Individualized Compensation

11  Plan ("ICP") containing commission rates, sales targets (i.e., quotas) and other numeric

12  terms, along with written Terms and Conditions of Incentive Compensation ("T&C"). The

13  ICP sets forth the formula by which commissions are to be calculated.

14     48.      Oracle considers the ICP, the T&C, and associated appendices to comprise

15  the commission contract required by California Labor Code Section 2751.

16     49.      The T&C is identical for all Class members.

17     50.      After an employee – such as Claimant Johnson – starts work in a sales

18  position, Oracle distributes the T&C and the ICP to her electronically and obtains her

19  acceptance to these provisions.

20     51.      Oracle first requires employees to click "accept" on the T&C, after which

21  Oracle then provides the ICP to the employees. Next, employees are asked to click "accept"

22  for the ICPs. Compliance with this acceptance process is required for employees to be

23  eligible to receive commission payments for their work.

24     52.      At various points after an initial ICP is in place, Oracle issues revised ICPs

25  to some employees through this same procedure. Typically, Oracle issues revised ICPs to

26  employees soon after the start of each fiscal year – usually sometime in mid-to-late June.

27  Oracle also issues revised ICPs at other times.

28     53.      Revised ICPs that have back-dated effective dates and therefore affect

9

1    previous sales are known as "re-plans." Re-plans apply retroactively to sales transactions

2    completed by Class members under the prior operative ICP. Re-plans affect past sales

3    going back to a date of Oracle's choosing, sometimes to the beginning of the same fiscal

4    year and sometimes to a date in a previous fiscal year. Re-plans are typically used to alter

5    – either by reducing or altogether eliminating – commissions generated and due under the

6    original ICP.

7        54.    Oracle's commission contracts set forth conditions precedent to the

8    payment of commissions. Generally, commissions are calculated and paid after

9    transactions are booked or revenue is recognized. The T&C sets forth the commission

10   calculation triggers and payment triggers for the different products sold by Oracle.

11   However, Oracle's re-plans frequently demand retroactive adjustment of earned

12   commissions even after the conditions are fully satisfied.

13       55.    Oracle's commission contracts contain uniform clauses authorizing

14   reductions to commissions. These standard clauses state that Oracle has discretion to: (a)

15   retroactively reduce commission payments and to otherwise determine the amount of

16   commissions paid; and (b) to deviate from, modify, cancel and/or replace any term of a

17   commission contract (*e.g.*, ICP), such as the commission rates and quotas.

18       56.    When sales employees press for explanations for retroactive reductions to

19   the commissions they have earned, Oracle cites to terms in its standardized commission

20   contracts that give the company discretion to adjust commissions at any time.

21       57.    The criteria Oracle uses to cut salespeople's commissions are not set forth

22   in Oracle's T&C or compensation plans. Nor does Oracle make clear that it will exercise

23   its discretion not only to change Oracle's commissions terms on an across-the-board basis

24   but also to retrospectively slash the commissions due to an individual salesperson.

25       58.    By the terms of the commission contract, and in practice, Oracle possesses

26   total, unilateral discretion to change the terms by which commissions are calculated and to

27   reduce commission payments due under the contract.  Oracle does so at any time of its

28   choosing, based on undisclosed criteria.

10

59. These contractual terms are unlawful, void and unenforceable under California law. The law prohibits the use of such discretionary power to deny employees the benefits of their commission contracts. An unfettered prerogative to eliminate employees' compensation and refuse to pay them would render these contracts illusory.

60. Moreover, Oracle fails to exercise its discretion reasonably and in good faith in accordance with the parties' expectations. Oracle commonly uses re-plans to retroactively reduce employees' earned compensation. Employees would not anticipate that Oracle would systematically abuse its position to appropriate the contractual fruits of their labor.

61. Typically, Oracle imposes re-plans that retroactively lower the employee's commission rate and/or increase her sales quota on transactions that sales representatives have already completed. The new calculation results in a significantly lower commission or no commission at all.

62. Thus, the re-plan is a mechanism to change an employee's commission contract in a way that cuts back commissions already earned. Oracle does not impose these forfeitures because the sales have fallen through, but merely because it does not want to actually pay the commission in effect at the time the sale was consummated.

63. Oracle's commission policies and procedures are based on the overriding goal of aligning the company's financial performance with its financial forecasts. In response to corporate demands that Oracle meet or exceed its profit targets, Oracle turns to employees' earned sales commissions as low-hanging fruit – ripe for the plucking. Oracle engages in a continual process of scrutinizing and adjusting existing ICPs in order to garner for itself monies due to its salesforce in connection with finalized transactions.

66. In so doing, Oracle routinely reduces salespeople's commissions to offset business costs which are beyond class members' control. Through the use of re-plans, Oracle effectively deducts its ordinary costs of doing business from the earned commissions of sales employees.

67. The re-plans can occur at any time, including after commissions have

11

FIRST AMENDED DEMAND FOR CLASS ARBITRATION

1 already been paid to the employees. For example, Oracle sometimes issues a re-plan for an

2 already-concluded fiscal year, months after the end of a fiscal year, with the effect of

3 reducing the commissions for the prior year.

4   68. After the re-plans, Oracle changes the underlying commission

5 compensation records to reflect lowered commissions. If the commissions have not yet

6 been paid to the employee, the amount of commissions in the payment pipeline is reduced.

7 If commissions have already been paid to the employee, but are retroactively cut, Oracle

8 "claws back" the commissions.

9   69. Oracle treats the claw-back amount as a debt to be paid off.  Often, this is

10 reflected in a "negative commission balance."  Oracle then takes newly earned commission

11 wages as a set-off for the negative balance, for employees who continue working at Oracle,

12 or demands cash repayment from former employees.

13   70. Current employees must either continue working for Oracle without any

14 commissions payments – as newly-earned commissions are forfeited to the Company to

15 pay off the "negative commissions balance" – or face the prospect of a collection demand

16 and suit from Oracle.  Oracle threatens to sic its team of lawyers and debt collectors on

17 employees who leave the Company with an outstanding "debt."

18   71. Where retroactive re-plans reduce previously paid commissions, Oracle

19 misrepresents that the previous payments were merely a loan, or merely an advance, and

20 converts previously paid commissions into debt owed by the employees.

21   72. However, Oracle records employees' commission payments on itemized

22 wage statements (paystubs) and on W-2 forms as commission wages, not as loans or

23 advances. Oracle treats the commission wages of California employees, at the time they

24 are paid, as W-2 income subject to customary taxes and withholdings.  Oracle does not

25 later amend any wage statements or tax statements to reflect a reduction in previously

26 reported commissions.

27   73. The sales commission practices described herein have been and are

28 continuing in nature.

**B. Claimant Marcella Johnson**

74.     Claimant Marcella Johnson's experience is typical and illustrative of sales representatives in general.

75.     Claimant joined Oracle in March 2013. Claimant worked in a division called Human Capital Management, in which she sold Oracle personnel management software to other employers.

76.     Oracle issued the T&C and an ICP to Claimant in accordance with the standard procedures described above.

77.     In November 2013 and December 2013, Oracle paid Claimant commission wages for numerous completed sales transactions in accordance with the terms of the ICP then in effect.  These commission wages were documented as earnings in Claimant's paystubs and subject to customary tax and withholdings.

78.     After these payments were made, Claimant was unexpectedly "re-planned" and given a lower commission rate. Oracle applied this new rate retroactively to the beginning of the fiscal year, June 2013.

79.     This re-plan significantly reduced Claimant's earned commissions on past sales transactions. As a result, Oracle's previous payments to Claimant under the operative commissions contract were greater than the total commissions resulting from the new, lower rate. Accordingly, after the re-plan, Claimant suddenly had a "negative commission balance" of approximately $20,000.

80.     According to Oracle, after the re-plan, the previous payments caused an overpayment and now Oracle could claw back the "negative commission balance."

81.     Claimant complained to her second-line supervisor Director of Sales Vonja Tenin, who stated that all commissions are "interest free loans."  Claimant understood this to mean that she was legally required to pay approximately $20,000 back to Oracle. Oracle's Compensation Department confirmed that Claimant owed a "debt" to Oracle.

82.     When Claimant inquired as to what would happen if she left the company, Oracle informed her that if she stopped working for Oracle, it would have the right to

13

FIRST AMENDED DEMAND FOR CLASS ARBITRATION

1    collect the negative balance from her, including through a lawsuit. Oracle indicated that it

2    would in fact pursue a collections process if Claimant left the Company without paying her

3    "debt." Thus, Oracle made clear that it would resort to legal process against Claimant if

4    she stopped working for Oracle before she had paid off the supposed "debt."

5        83.    Oracle's threat of a potential collections action against Claimant was

6    credible. Claimant had been informed and believed that Oracle had actually filed

7    collections actions against other former employees in her division to recover bonuses that

8    had been paid to them.  In numerous instances, Oracle has pursued or threatened collection

9    lawsuits against its former sales employees to claw back commission payments.

10       84.    Oracle's threat acted as a hammer that compelled Claimant to work without

11   commissions for several months.  Claimant desperately wanted to resign from her job and

12   leave Oracle, but could not.  Claimant could not afford to "repay" Oracle out of her pocket.

13   She was a new parent and the primary earner in her household.  She had only recently

14   resolved her personal debts and was rebuilding her credit to purchase a home for her family.

15   A collections lawsuit against Claimant would not only have required her to expend

16   substantial time and resources but would have irrevocably damaged her credit.

17       85.    Consequently, Ms. Johnson felt she had no choice but to remain at Oracle

18   and work off her "debt" to the company.

19       86.    Additional commissions that Claimant earned for the remainder of her

20   employment with Oracle were not paid to her but were confiscated by Oracle to offset the

21   $20,000 "negative commission balance."

22       87.    Claimant resigned from her position at Oracle effective July 2014, as soon

23   as she had earned sufficient additional commissions to get "out of the hole" with Oracle

24   and avoid a threatened collections action.

25       88.    Thus, Claimant worked for several months without commissions, which

26   formed a substantial part of Oracle's compensation package and to which she was

27   contractually and legally entitled.

28       89.    Likewise, other sales employees in Human Capital Management suffered

14

FIRST AMENDED DEMAND FOR CLASS ARBITRATION

1   the effects of Oracle's retroactive "re-planning" practices during the same fiscal year.

2   90.   Throughout the relevant period, sales employees company-wide have been

3   routinely deprived of earned commission payments because of similar re-plans. Like

4   Claimant, Class members have regularly suffered retroactive changes to their contractual

5   commissions criteria resulting in a substantial loss of earned compensation.

6   **FIRST CLAIM FOR RELIEF**
**FAILURE TO PAY EARNED COMMISSION WAGES AND UNLAWFUL**
7   **DEDUCTIONS FROM EARNED COMMISSION WAGES**
**IN BREACH OF CALIFORNIA LABOR CODE AND CONTRACT**
8   **(On Behalf of Claimant and the Class)**

9   91.   Claimant re-alleges and incorporates by reference all previous paragraphs.

10  92.   Claimant and Class members earned commission wages within the meaning

11  of California Labor Code Sections 200 and 204.1.

12  93.   Oracle has knowingly, intentionally, and willfully failed and refused to pay

13  Claimant and Class members the entire amount of the commissions they earned under their

14  respective commissions plans. Oracle has operated under and continues to operate under a

15  common policy and plan of failing and refusing to pay salespeople their full compensation

16  by systematically implementing retroactive forfeitures of commissions earned.

17  94.   Claimant and Class members entered into written commission contracts

18  with Respondent Oracle. These contracts provided that Oracle would pay commissions

19  based on sales credited to Claimant and Class members in accordance with the commission

20  rates set forth in their Compensation Plans (ICPs).

21  95.   Claimant and Class members have performed all of the express contractual

22  duties and obligations that would entitle them to receive commissions under those ICPs.

23  Claimant and Class members have met all lawful and express conditions precedent to the

24  earning of commissions. Oracle has credited Claimant and Class members for sales that

25  are encompassed by their commission contracts and calculated the commissions that they

26  are entitled to on those sales based on their ICPs.

27  96.   But, Oracle has failed to pay Claimant and Class members the commissions

28

15

due under the contracts. Oracle relies on provisions that allow it to retroactively change commission terms at any time and thereby deprive salespeople of commissions earned and due for completed sales. These provisions are void and unenforceable exculpatory clauses under California Civil Code Section 1668.

97.     Furthermore, these provisions are unlawful, void and unenforceable under California Labor Code Sections 221, 223, and 2751. These terms, if enforced, would render Oracle's contractual bargain and obligation to pay commissions a nullity that the company can disregard at whim.

98.     Labor Code Section 221 states: "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." Labor Code Section 221 prohibits an employer from deducting from wages as a set-off for debts. Furthermore, California's Industrial Welfare Commission Wage Orders prohibit an employer from using employees' earned wages to offset its ordinary business costs.

99.     Oracle's use of re-plans to avoid paying earned commissions, including by clawing back previously paid compensation, constitutes the unlawful withholding and deduction of earned wages in violation of Section 221.

100.     Labor Code Section 223 states: "Where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract."

101.     In violation of Section 223, Oracle secretly underpays salespeople's commission wages while purporting to follow the commission rates designated by contract. Oracle clandestinely recalculates the commissions owed and due to employees and pays them amounts lower than those to which they are contractually entitled.

102.     Labor Code Section 2751 states, in pertinent part: "Whenever an employer enters into a contract of employment with an employee for services to be rendered within this state and the contemplated method of payment of the employee involves commissions, the contract shall be in writing and shall set forth the method by which the commissions

16

shall be computed and paid." Section 2751 does not permit employers to unilaterally and retroactively set the terms and conditions for commissions payments; employees must agree to the applicable terms and conditions in advance and be able to anticipate their actual compensation as they are performing the work and making applicable sales.

103.    In violation of Section 2751, Oracle routinely deviates from the specified contractual methods for the computation and payment of commissions. Stated otherwise, Oracle improperly relies on undisclosed methods not set forth in the commissions contract.

104.    Individually and collectively, Labor Code Sections 221, 223, and 2751 and Civil Code Section 1668 invalidate Oracle's illegal contract provisions and give rise to Claimant and Class members' claims for unpaid wages under the valid and enforceable terms of their written commission contracts.

105.    As part of the retroactive re-plan practices and related compensation practices detailed in this Demand, Oracle deducted from Claimant's and class members' earned commissions and either withheld wages due or confiscated back previously paid wages including by taking deductions from additional earned wages.

106.    Labor Code Section 221 prohibits an employer from deducting amounts from an employee's wages, even as a set-off for amounts clearly owed by the employee. Here, Claimant and Subclass members did not lawfully owe to Oracle any commissions they had earned.  The commission wages that were paid to Claimant and class members or designated as due to them were not loans or advances.  Because the lawful and express contractual conditions to earning commissions were satisfied, the commissions are considered wages.  Therefore, under Section 221, Oracle cannot lawfully recoup the commission whether or not it has been paid.

107.    Nonetheless, Oracle engaged in self-help and deducted commission wages to set-off commission amounts that it wanted to take back following a retroactive re-plan. Such withholding and diversion of wages is not authorized under Labor Code Section 224 and constitutes unlawful wage deductions under Section 221.

108.    Pursuant to California Labor Code §§ 200 et seq., Claimant and Class

17

1  members are entitled to recover unpaid wages, with interest, attorney's fees, and costs, all

2  in an amount to be proven at trial.

**SECOND CLAIM FOR RELIEF**
**FAILURE TO PAY WAGES UPON SEPARATION**
**California Labor Code §§ 201, 202, 203**
**(On Behalf of Claimant and the Class)**

109.  Claimant re-alleges and incorporates by reference all previous paragraphs.

110.  Claimant resigned from Oracle and concluded her employment in July 2014. As of that date, Claimant was owed at least $20,000 in unpaid commissions.

111.  At the time of Claimant's separation, Respondent Oracle knowingly and willfully failed to pay her all of the commission wages she had earned and which had been calculated or could be reasonably calculated under the commissions contract in effect at the time the relevant sales were consummated.

112.  Oracle has operated under and continues to operate under a common policy and plan of failing and refusing to timely pay unpaid wages owed to sales representatives whose employment ended, as required by California Labor Code Sections 201 and 202.

113.  As a result of its failure to timely pay separated employees – including Claimant and Class members – all compensation due, Oracle is liable for statutory waiting time penalties pursuant to California Labor Code Section 203.

**THIRD CLAIM FOR RELIEF**
**UNFAIR COMPETITION**
**California Business & Professions Code §§ 17200 et seq.**
**(On Behalf of Claimant and the Class)**

114.  Claimant re-alleges and incorporates by reference all previous paragraphs.

115.  Respondent Oracle is a "person" as defined under California Business & Professions Code Section 17021.

116.  Business & Professions Code Section 17200 defines unfair competition, in relevant part, as an unfair or unlawful business act or practice.

117.  By the conduct alleged herein, Oracle has engaged and continues to engage in a business practice which violates California law, including but not limited to California

18

FIRST AMENDED DEMAND FOR CLASS ARBITRATION

1    Labor Code Sections 200, 201, 202, 204, 221, 223, and 2751 and the applicable Industrial

2    Welfare Commission Wage Orders.

3         118.    Oracle's willful failure to pay all earned commission wages and failure to

4    maintain accurate records of commission earnings and deductions constitutes unlawful

5    activity prohibited by California Business and Professions Code Section 17200.

6         119.    Oracle's policies, practices and procedures alleged herein constitute unfair

7    business practices under Section 17200. Oracle's commission wage policies, practices, and

8    procedures deceive employees about how and what they will be paid and oppress

9    employees who have inherently less bargaining power than their employers and possess

10   inferior information.

11        120.    By continually shifting the goal posts after the fact and reclaiming earned

12   wages on which its salespeople rely, Oracle leaves these workers acutely vulnerable to

13   economic privation – in contravention of the fundamental public policies of California.

14        121.    Furthermore, any failure to pay wages is, by definition, an unfair business

15   practice under Section 17200.

16        122.    As a result of its unlawful and unfair acts, Oracle has reaped and continues

17   to reap unfair benefits and illegal profits at the expense of Claimant and the Class members.

18        123.    Oracle should be made to disgorge these ill-gotten gains and restore to

19   Claimant and the Class members the wrongfully withheld wages to which they are entitled,

20   as well as interest on these wages.

21        124.    Claimant and Class members seek all injunctive and preventive relief

22   authorized by Business and Professions Code Sections 17202 and 17203.

23        125.    This action is designed to ensure the enforcement of an important right

24   affecting the public interest and a large number of employees.  The necessity and financial

25   burden of private enforcement is great, and the risks to the named Claimant for stepping

26   forward are also significant.  Accordingly, Claimant would be entitled to attorneys' fees

27   should she prevail, separate and apart from any recovery of unpaid wages and penalties.

28

### FOURTH CLAIM FOR RELIEF
### PEONAGE (DEBT SERVITUDE) IN VIOLATION OF 18 U.S.C. §§ 1581, 1595
### (On Behalf of Claimant)

126.   Claimant re-alleges and incorporates by reference all previous paragraphs.

127.   Under federal law, 18 U.S.C. § 1581, it is unlawful to hold any person to a condition of "peonage" – i.e. debt servitude. Peonage is a status of compulsory or involuntary service based upon an actual or alleged indebtedness of the worker.

128.   Oracle held Claimant in a condition of peonage by compelling her to work for the Company in order to pay off an alleged "debt." Oracle engaged in improper and wrongful behavior that led Claimant to believe that she had no alternative but to perform the labor. Oracle threatened serious legal action against Claimant if she did not comply.

129.   Oracle engaged in impermissible threats and intimidation to compel Claimant to work against her will. When Oracle unlawfully manufactured an alleged "debt" of $20,000, Claimant faced an intolerable choice.  If she left Oracle, she would be forced to defend against a baseless legal action and would face immeasurable financial harm.  She could not afford to pay the "debt" payments or to hire a lawyer to defend her.  Claimant knew she could not pay the amount in full, and she reasonably feared that Oracle would file a collections action and obtain a judgment against her. Claimant did not know the full consequences of defaulting in a collections action. At minimum, a judgment would cause almost irreparable long-term harm to her credit, substantially impacting her and her family's future ability to obtain credit and future employment.  Hence, the mere credible threat of a collections action was paralyzing to Claimant.

130.   In the face of a credible threat of a collections action and judgment against her, and the prospect of devastating long-term financial and other harm to her and her family, Claimant felt compelled to continue working at Oracle.  Oracle's use of intimidation tactics and threats caused to Claimant to continue performing services for the Company.

131.   As a result of Oracle's violation of 18 U.S.C. § 1581, and pursuant to 18 U.S.C. § 1595, Claimant is entitled to economic damages, non-economic damages, and

20

1   attorneys' fees.

**FIFTH CLAIM FOR RELIEF**
**FORCED LABOR IN VIOLATION OF 18 U.S.C. §§ 1589, 1595**
**(On Behalf of Claimant)**

132.    Claimant re-alleges and incorporates by reference all previous paragraphs.

133.    Under federal law, 18 U.S.C. § 1589, it is unlawful to "knowingly…obtain[] the labor or services of a person…by means of serious harm or threats of serious harm to that person or another person; by means of the abuse or threatened abuse of law or legal process; or by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint…"

134.    Oracle knowingly obtained Claimant's labor and services by threatening serious harm to Claimant, including by threatening abuse of the legal process.  Oracle knowingly obtained Claimant's labor and services through a scheme intended to cause Claimant to believe that she would suffer serious harm if she stopped working for Oracle.

135.    In particular, Oracle fabricated approximately $20,000 in alleged "debt" through an unlawful retroactive re-plan. Oracle then threatened Claimant that she had to work off the debt, pay it back out of her pocket, or face a costly and burdensome collections lawsuit.

136.    This scenario presented Claimant with an intolerable Hobson's choice, in which working against her will – however repugnant – was the only viable option. Claimant could not pay Oracle in cash.  And, as described above, a collections action and default judgment would harm her and her family in serious ways – some of which Claimant could clearly foresee and some she could only anticipate. Hence, the mere credible threat of a collections action was paralyzing to Claimant.

137.    In the face of a credible threat of a collections action and judgment against her, and the prospect of devastating long-term financial and other harm to her and her family, Claimant felt compelled to continue working at Oracle.  Oracle's threats of serious harm and abuse of the legal process caused Claimant to continue performing services for

21

1   the Company.

2         138.    Oracle threatened the abuse of legal process – namely an aggressive

3   collections suit – to enforce an invalid and unlawful "debt." Oracle made these threats to

4   exert pressure on Claimant to continue working at a time that she intended to resign and

5   leave the Company.

6         139.    As a result of Oracle's violation of 18 U.S.C. § 1589, and pursuant to 18

7   U.S.C. § 1595, Claimant is entitled to economic damages, non-economic damages, and

8   attorneys' fees.

9                              **PRAYER FOR RELIEF**

10        **WHEREFORE**, Claimant prays for the following relief:

11        A.    Certification of the claims in this action as a class action under Federal Rule

12   of Civil Procedure 23 and Rule 3 of the JAMS Class Action Procedures.

13        B.    Designation of Claimant as Class Representative.

14        C.    An award of damages to Claimant and the Class in excess of 150 million

15   dollars;

16        D.    Equitable and injunctive relief to remedy Respondent Oracle's violations of

17   state law, including but not necessarily limited to an order enjoining Oracle from

18   continuing its unlawful practices;

19        E.    Statutory penalties under state law;

20        F.    Restitution under state law;

21        G.    Pre-judgment and post-judgment interest, as provided by law;

22        H.    Attorneys' fees and costs under applicable law, including expert fees and

23   costs.

24        I.    Such additional and further relief as this Tribunal may deem just and proper.

25   ///

26   ///

27   ///

28   ///

                                                                                    22

1    Dated:  August 25, 2017                    Respectfully submitted,

2

3                                              By: _____

4

5                                              Xinying Valerian
                                               SANFORD HEISLER SHARP, LLP
6
                                               *Counsel for Claimant and the Proposed Class*
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                                              23
                          FIRST AMENDED DEMAND FOR CLASS ARBITRATION