Vedder Price (CA), LLP
Brendan Dolan, Bar No. 126732
bdolan@vedderprice.com
Lucky Meinz, Bar No. 260632
lmeinz@vedderprice.com
Brittany A. Sachs, Bar No. 287651
bsachs@vedderprice.com
275 Battery Street, Suite 2464
San Francisco, California 94111
T:  +1 415 749 9500
F:  +1 415 749 9502

Attorneys for Respondent
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARCELLA JOHNSON, on behalf of herself, and all others similarly situated,<br><br>Petitioner,<br><br>v.<br><br>ORACLE AMERICA, INC.,<br><br>Respondent. | Case No. 3:17-cv-05157-EDL<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RESPONDENT ORACLE AMERICA, INC.'S OPPOSITION TO MOTION TO COMPEL ARBITRATION**<br><br>Date:      November 7, 2017<br>Time:      9:00 a.m.<br>Dept:      E, 15th Floor<br>Judge:     Hon. Elizabeth D. Laporte<br><br>Trial Date: None set.<br>Date Action Filed: September 6, 2017 |

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MPA'S ISO ORACLE'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
3:17-CV-05157-EDL

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1

II. FACTS ........................................................................................................................... 2

   A. Johnson's Arbitration Agreements.......................................................................... 2

   B. Johnson's Demand for Arbitration and Oracle's Objections. ................................. 4

   C. Johnson's Petition to Compel Arbitration, JAMS Commencement of the Arbitration, and the Court's Injunction. .................................................................................................. 4

III. LEGAL ARGUEMENT................................................................................................ 5

   A. The Court Must Decide the Issue of Arbitrability in this Case.............................. 5

      1. The question which agreement applies is a substantive gateway arbitrability issue for the court to determine.............................................................................................................. 6

      2. The terms of the class waiver in Agreement #2 preclude delegation to an arbitrator. .. 7

      3. The reference to JAMS rules is not a clear and unmistakable delegation of authority to arbitrate arbitrability. ............................................................................................................ 8

         a. Reference to JAMS rules does not constitute a clear and unmistakable delegation in this case..............................................................................................................9

         b. JAMS rules themselves are not a clear and unmistakable delegation of authority to an arbitrator...............................................................................................10

      4. Johnson's characterization of this as a "procedural" dispute is wrong...................... 12

   B. Agreement #2 is the Authoritative and Enforceable Arbitration Agreement. ................... 13

      1. Agreement #2 constituted a novation. ................................................................... 13

      2. Agreement #2 is not an inadequate modification of Agreement #1. ........................... 15

      3. Agreement #2 is not unenforceable by virtue of inadequate or unreasonable notice. . 17

      4. Agreement #2 is not Unconscionable. ................................................................... 19

         a. Procedural Unconscionability if any, is Minimal.............................................19

         b. There is No Substantive Unconscionability....................................................20

         c. The Representative Action Waiver Does Not Invalidate Agreement #2...21

         d. The Class Waiver Provision Does Not Render Agreement #2 Unconscionable...................................................................................................22

      5. Oracle cannot be judicially estopped from asserting that Agreement #2 applies. ........ 22

   C. The Declaration of Johnson's Counsel is Objectionable. ................................... 24

   D. Discovery Is Not Appropriate. ............................................................................. 24

   E. The Court Should Stay Its Determination Of The Enforceability Of The Class Waiver Pending The Supreme Court. ...................................................................................... 24

IV. CONCLUSION.............................................................................................................25

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

MPA'S ISO ORACLE'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
3:17-CV-05157-EDL

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*AT&T Mobility LLC v. Bernardi,*
  2011 WL 5079549 (N.D. Cal. Oct. 26, 2011) ................................................................7, 8

*AT&T Mobility LLC v. Concepcion,*
  563 U.S. 333 (2011) .....................................................................................................5, 22

*AT&T Mobility LLC v. Conception,*
  131 S.Ct. 1740, 1748, 179 L.Ed.2d 742 (2011) ...............................................................8

*B-S Steel Of Kansas, Inc. v. Texas Indus., Inc.,*
  439 F.3d 653 (10th Cir. 2006) .....................................................................................16, 17

*BG Group v. Republic of Argentina,*
  134 S. Ct. 1198 (2014) ..............................................................................................5, 6, 12

*Blye v. Cal. Sup. Ct.,*
  2014 WL 295022 (N.D. Cal. Jan. 21, 2014) ...................................................................24

*Brennan v. Opus Bank,*
  796 F.3d 1125 (9th Cir. 2013) ........................................................................................10

*Campanelli v. ImageFIRST Healthcare Laundry Specialists, Inc.,*
  2017 WL 2929450 (N.D. Cal. July 10, 2017) .................................................................25

*Chin v. Boehringer Inelham Pharm., Inc.,*
  2017 WL 3977381 (N.D. Cal. Sept. 11, 2017) .....................................................19, 20, 21

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*
  207 F.3d 1126 (9th Cir. 2000) ...........................................................................................6

*Citigroup, Inc. v. Abu Dhabi Investment Auth.,*
  776 F.3d 126 (2d Cir. 2015) ............................................................................................12

*Colvin v. NASDAQ OMX Group, Inc.,*
  2015 WL 6735292 (N.D. Cal. Nov. 4, 2015) ..................................................................21

*Crain v. Burroughs Corp.,*
  560 F. Supp. 849 (C.D. Cal. 1983) ..................................................................................15

*Crossen v. Foremost-McKesson, Inc.,*
  537 F. Supp. 1076 (N.D. Cal. 1982) ................................................................................15

*Darensburg v. Metro. Trans. Comm'n,*
  2006 WL 167657 (N.D. Cal. Jan 20, 2006) .....................................................................24

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Dasher v. RBC Bank,*
    745 F.3d 1111 (11th Cir. 2014)..........................................................................7

*Davis v. Nordstrom, Inc.,*
    755 F.3d 1089 (9th Cir. 2014)..............................................................16, 17, 18

*Dominic Cobarruviaz, et al. v. Maplebear, Inc.,*
    143 F.Supp.3d 930 (2015)...................................................................................9

*Eberle v. Smith,*
    2007 WL 3151450 (S.D. Cal. Oct. 26, 2007) ...................................................16

*Energetics Incorporated v. NewOak Capital Markets, LLC,*
    645 F.3d 522 (2nd Cir. 2011)..............................................................................7

*Fanucchi & Limi Farms v. United Agric. Products,*
    414 F.3d 1075 (9th Cir. 2005)...........................................................................15

*Ferguson v. Countrywide Credit Indus., Inc.,*
    298 F.3d 778 (9th Cir. 2002).............................................................................16

*Fowler v. Wells Fargo Bank, N.A.,*
    2011 WL 175506 (N.D. Cal. Jan. 18, 2011) (Laport, J.) ...................................9

*Green Tree Fin. Corp. v. Bazzle,*
    539 U.S 444 (2003) ..........................................................................................12

*Guerrero v. Halliburton Energy Servs., Inc.,*
    2017 WL 3116672 (E.D. Cal. July 21, 2017) .............................................24, 25

*Harris v. Coldwell Banker Real Estate Corp.,*
    2007 WL 2127585 (N.D. Miss. July 23, 2007)..................................................20

*Hersh v. Nat'l Found. Life Ins. Co.,*
    2012 WL 381173 (N.D. Cal. Feb. 6, 2012) (Laporte, J.).............................22, 23

*Howsam v. Dean Witter Reynolds, Inc.,*
    537 U.S. 79 (2002) .....................................................................................5, 6, 8

*Hunter v. First Nat'l Bank of Omaha, NA,*
    2015 WL 12672151 (S.D. Cal. July 31, 2015) .................................................20

*James v. Comcast Corp.,*
    2016 WL 4269898 (N.D. Cal. Aug. 15, 2016)......................................13, 14, 15

*Jefferson Pilot Life Ins. Co. v. Griffin,*
    2008 WL 2485598 (M.D.N.C. June 16, 2008) ..................................................20

*Knutson v. Sirius XM Radio Inc.,*
    771 F.3d 559 (9th Cir. 2014)...............................................................................5

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-iii-

MPA'S ISO ORACLE'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
3:17-CV-05157-EDL

*Landis v. North Am. Co.,*
    299 U.S. 248 (1936)..............................................................................................24

*Lee v. JPMorgan Chase & Co.,*
    982 F.Supp.2d 1109 (C.D. Cal. 2013)...................................................................12

*Mancini v. Western and Southern Life Ins. Co.,*
    2017 WL 3783910 (S.D. Cal. Aug. 31, 2017) ....................................................6, 7

*McElrath v. Uber Techs., Inc.,*
    No. 16-CV-07241-JSC, 2017 WL 1175591 (N.D. Cal. Mar. 30, 2017) ................25

*Mohamed v. Uber Technologies, Inc.,*
    848 F.3d 1201 (9th Cir. 2016)...............................................................................10

*Morris v. Ernst & Young, LLP,*
    834 F.3d 975 (9th Cir. 2016), *cert. granted,* 137 S. Ct. 809 (2017) ...............1, 22, 25

*Nada Pac. Corp. v. Power Eng'g and Mfg., Ltd.,*
    73 F. Supp. 3d 1206 (N.D. Cal. 2014) .............................................................22, 23

*Norris v. Allied-Sysco Food Servs., Inc.,*
    948 F. Supp. 1418 (N.D. Cal. 1996) .....................................................................22

*O'Connor, et al v. Uber Technologies, Inc.,*
    No. 3:13-cv-03826-EMC (9th Cir. Sept. 22, 2017) ..............................................25

*Oracle v. Myriad Group A.G.,*
    724 F3d. 1069 (9th Cir. 2013)............................................................................9, 10

*Owen v. MBPXL Corp.,*
    173 F. Supp. 2d 905 (N.D. Iowa 2001)..................................................................18

*Poublon v. C.H. Robinson Co.,*
    846 F.3d 1251 (9th Cir. 2017)........................................................19, 20, 21, 22

*Rodriguez v. Jerome's Furniture Warehouse,*
    2017 WL 3131845 (S.D. Cal. July 24, 2017) .......................................................25

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,*
    559 U.S. 662 (2010).............................................................................................8, 9

*Swift v. Zynga Game Network, Inc.,*
    805 F. Supp. 2d 904, (N.D. Cal. Aug 4, 2011) ................................................14, 19

*Tagliabue v. J.C. Penney Corp. Inc.,*
    2015 WL 8780577 (E.D. Cal. Dec. 15, 2015)............................................14, 15, 19

*In re Yahoo! Litig.,*
    251 F.R.D. 459 (C.D. Cal. 2008) ..........................................................................22

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-iv-

**California Cases**

*24 Hour Fitness, Inc. v. Superior Court*,
    66 Cal. App. 4th 1199 (1998)..................................................................18

*Asmus v. Pac. Bell*,
    23 Cal. 4th 1 (2000) ...................................................................17, 18

*Avery v. Integrated Healthcare Holdings, Inc.*,
    218 Cal. App. 4th 50 (2013).................................................................20

*Baltazar v. Forever 21, Inc.*,
    62 Cal. 4th 1237 (2016) ..............................................................19, 21

*Beckwith v. Sheldon*,
    165 Cal. 319 (1913) ...........................................................................15

*Brookwood v. Bank of America*,
    45 Cal. App. 4th 1667 (1996)..............................................................19

*Davis v. Jacoby*,
    1 Cal.2d 370 (1934) ...........................................................................17

*Gorlach v. Sports Club Co.*,
    209 Cal. App. 4th 1497 (2012).............................................................18

*Greg v. American Mgmt Servs.*
    204 Cal. App. 4th 803 (2012)..............................................................15

*Iskanian v. CLS Transp. Los Angeles, LLC*,
    59 Cal. 4th 348 (2014) .......................................................................21

*Mercuro v. Superior Court*,
    96 Cal. App. 4th 167 (2002)..........................................................16, 21

*Sanchez v. Valencia Holding Co., LLC*,
    61 Cal. 4th 899 (2015) ........................................................19, 20, 22

*Sandquist v. Lebo Automotive Inc.*,
    1 Cal. 5th 233 (2016) .........................................................................12

*Schachter v. Citigroup, Inc.*,
    47 Cal. 4th 610 (2009) .......................................................................18

*Serafin v. Balco Properties Ltd., LLC*,
    235 Cal. App. 4th 165 (2015), review denied (June 10, 2015)...................15

Vedder Price (CA), LLP
Attorneys at Law
San Francisco

-v-

MPA'S ISO ORACLE'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
3:17-CV-05157-EDL

**Other State Cases**

*Hicks v. Evans,*
     2012 WL 398821 (Feb. 7, 2012).........................................................................24

*Roberts v. Bartels,*
     2013 WL 6173142 (N.D. Cal. Feb. 19, 2013).........................................22, 23

**Federal Statutes**

Clayton Act ..............................................................................................................7

Federal Arbitration Act ....................................................................................1, 20

NLRA ......................................................................................................................22

**California Statutes**

Cal. Civ. Code
     §§ 1633.7(a), (b).............................................................................................15

Cal. Com. Code
     § 1201(b)(37) ..................................................................................................15

California Arbitration Act .....................................................................................21

California Code of Civil Procedure
     § 1281.8............................................................................................................21

**Other Authorities**

DIR Policies and Procedures for Wage Claim Processing, available at
     https://www.dir.ca.gov/dlse/policies.htm......................................................23

Fed. R. Evid. 201 ...............................................................................................9, 24

Fed. R. Evid. 401, 402, 602, 802, 901 .................................................................24

JAMS Class Action Procedures Rule 1 ............................................................9, 11

JAMS Employment Rules and Procedures Rule 11 ........................................9, 11

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MPA'S ISO ORACLE'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
3:17-CV-05157-EDL

## I.     INTRODUCTION

Oracle America, Inc. urges the Court to deny Marcella Johnson's motion to compel class arbitration. The Court, not an arbitrator, must determine the arbitrability of Johnson's class action arbitration demand, and its determination should be that the most recent arbitration agreement, which includes the class action waiver, is the enforceable agreement to arbitrate. The Court's ruling on the enforceability of the class waiver should be deferred pending the Supreme Court's ruling on *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016), *cert. granted*, 137 S. Ct. 809 (2017).

This dispute presents a foundational gateway issue reserved for the Court under the Federal Arbitration Act: Is there an enforceable agreement to arbitrate the dispute that is presented by Johnson's petition to compel class arbitration? The answer requires a determination of whether the original arbitration agreement is enforceable as Johnson contends, or whether the most recent agreement is the enforceable agreement to arbitrate as Oracle contends. Determination of that issue is solely within the Court's authority.

Contrary to Johnson's claim, the Court's authority has not been clearly and unmistakably delegated to an arbitrator. The most recent agreement to arbitrate expressly provides that the Court, and not an arbitrator, must decide the issue of enforceability of the class waiver – the ultimate issue in this case. JAMS rules which vest in the arbitrator authority to determine arbitrability are not clearly and unmistakably incorporated into the arbitration agreement. Further, the JAMS rules themselves do not vest authority in the arbitrator to determine whether a class arbitration is proper – they defer the issue to the Court.

The issue raised is not a mere "procedural" question for an arbitrator as Johnson claims; it is a substantive issue regarding the formation and existence of an agreement to arbitration.

Properly deciding the issue itself, the Court should find that the enforceable agreement to arbitrate is the most recent agreement because it constituted a novation – a new agreement – which expressly superseded and replaced any previous agreement regarding arbitration, including the agreement that Johnson contends applies. None of Johnson's arguments regarding why the most recent agreement should not be found to apply support a different conclusion:

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

MPA'S ISO ORACLE'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
3:17-CV-05157-EDL

- The most recent agreement was not an improperly executed modification of the original agreement; it was a completely new agreement which entirely superseded the original agreement. The modification provision in the original agreement was not implicated.

- The most recent agreement is not unenforceable because Johnson received "inadequate notice." It was a bilateral agreement for which notice beyond the tendering of the agreement itself was not required. The cases she cites for imposition of a notice requirement are inapplicable because they involved unilateral employer policies – not the bilateral agreement at issue here.

- The most recent agreement and the class waiver cannot be found to be unconscionable. Johnson willingly entered the sales commission agreement in which the agreement to arbitrate was included and received sales commissions under it. She cannot claim that it did not apply to her.

- Oracle cannot be judicially estopped from asserting that the most recent agreement with the class wavier applies. It has never taken a position contrary to its position in this matter; none of the elements for application of judicial estoppel are met.

Upon its determination that the most recent agreement is the enforceable agreement to arbitrate, the Court's ruling on whether arbitration may be compelled should be deferred until the Supreme Court issues its forthcoming opinion on the lawfulness of class waivers.

## II.   FACTS

### A.   Johnson's Arbitration Agreements.

Marcella Johnson was a sales employee at Oracle from March 2013 through July 2014. She agreed to an Incentive Compensation Plan ("Comp Plan") for each fiscal year of her employment, which, among other things, set forth her sales commission agreement and other employment terms. Lutz Decl. ¶ 3.

On June 2, 2014, Johnson accepted and agreed to her Fiscal Year ("FY") 2015 Comp Plan, which was comprised of the Oracle FY15 Incentive Compensation Terms & Conditions ("FY15 Ts&Cs") and her FY 2015 Individualized Compensation Plan ("FY15 ICP"), which incorporated an agreement to arbitrate and a class action waiver. Oracle refers to this most recent agreement to arbitrate with Johnson as Agreement #2. The FY15 ICP stated:

> I acknowledge receipt of and accept as my FY15 compensation package the Plan, which consists of this document and the FY15

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-2-

MPA'S ISO ORACLE'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
3:17-CV-05157-EDL

1   Incentive Compensation Terms and Conditions including the
applicable Appendices listed below* (referred to as the "FY15
2   Terms and Conditions". <u>I have read and agree to be bound by the
FY15 Terms and Conditions, including but not limited to the
3   Agreement to Arbitrate Disputes in Appendix 9 if Appendix 9 is
listed below as being applicable to me.</u>
4
...
5   *List of Applicable Appendices:
. . . .
6   Appendix 9: Agreement to Arbitrate Disputes (Applicable to US
Employees Only)
7

8   Lutz Decl. ¶¶ 10-13, Ex. 1.  (Emphasis added.)  Agreement #2 stated:

9   Employee and Oracle understand and agree that, expect as set forth
below, any existing or future dispute or claim arising out of or
10   related to Employee's Oracle employment, or the termination of
that employment, including but not limited to disputes arising
11   under the Plan, will be resolved by final and binding arbitration
and that no other forum for dispute resolution will be available to
12   either party, except as to those claims identified below.

13

14   Agreement #2 also provided for application of the FAA, and AAA or JAMS rules:

15   Arbitration proceedings under this Agreement to Arbitrate
Disputes shall be conducted pursuant to the Federal Arbitration
16   Act, and in accordance with the National Rules for the Resolution
of Employment Disputes of the American Arbitration Association
17   or the Employment Arbitration Rules and Procedures adopted by
Judicial Arbitration & Mediation Services ("JAMS"). . . .
18

19   Further, Agreement #2 included a class action waiver and reserved authority to the Court to

20   determine any challenge to its enforceability:

21   Any claim by Employee against Oracle which is subject to
arbitration . . . must be brought in Employee's individual capacity
22   and not as a plaintiff or class member in any purported class,
collective, representative, multiple plaintiffs or similar non-
23   individual proceeding ("class action").   Employee expressly
waives any and all rights to bring, participate in or maintain in any
24   forum any class action regarding or raising claims which are
subject to arbitration . . . . The arbitrator shall not have authority to
25   combine or aggregate similar claims or conduct, or conduct any
class action or make an award to any person or entity not a party to
26   the arbitration. <u>Any claim that all or part of the class action waiver
in this paragraph is unenforceable or voidable may be determined
27   only by a court of competent jurisdiction and not by an arbitrator.</u>
28

Vedder Price (CA), LLP
Attorneys at Law
San Francisco

-3-

MPA'S ISO ORACLE'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
3:17-CV-05157-EDL

Lutz Decl. ¶¶ 14-15, Ex. 2, p. 84 (Emphasis added.)  Finally, Agreement #2 expressly provided that it superseded all prior arbitration agreements:

> This Agreement to Arbitrate Disputes contains the complete agreement between Oracle and Employee regarding the subject of arbitration, and supersedes any and all prior written, oral or other types of representations and agreements between Oracle and Employee regarding the subjects of arbitration and dispute resolution.

Lutz Decl. ¶ 16, Ex. 2, pp. 84-85.

In connection with her hiring in March 2013, Johnson entered an Employment Agreement and Mutual Agreement to Arbitrate.  ("Agreement #1".)  ECF No. 1-1; ECF No. 1-2, pp. 12-13. Agreement #1 did not include a class action waiver, or address class claims at all.  ECF No. 1-1.

**B.    Johnson's Demand for Arbitration and Oracle's Objections.**

Notwithstanding that Johnson agreed to, and her counsel had notice of Agreement #2 with the class waiver, she submitted a demand for class arbitration to JAMS.  Dolan Decl. ¶¶ 5-8, Exs. 4-6.  Johnson claimed in her demand and in a subsequent amended demand for class arbitration that JAMS had jurisdiction over the putative class action arbitration based on Agreement #1.  She made no mention of Agreement #2 or the class waiver.  *Id.* at ¶ 9, Ex. 6, p. 4.  Oracle objected to JAMS' jurisdiction over the demands for class arbitration.  *Id.* at ¶¶ 11-30, Exs. 4, 8-12, 15-16.

**C.    Johnson's Petition to Compel Arbitration, JAMS Commencement of the Arbitration, and the Court's Injunction.**

On September 6, 2017, Johnson filed a petition to compel arbitration of her amended demand for class arbitration in District Court.  ECF No. 1; Dolan Decl. ¶ 21.  She attached Agreement #1 as an exhibit to her petition; she did not attach or mention Agreement #2. ECF No. 1.

Despite having requested judicial determination on the issue of arbitrability, on September 15, 2017, counsel for Johnson, sent a JAMS Case Manager a letter requesting that JAMS proceed with administration of the arbitration.  Dolan Decl. ¶ 26, Ex. 11.

Oracle's counsel objected and requested that JAMS defer any steps to proceed with the arbitration until Johnson's petition to compel class arbitration was heard in District Court.  The

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-4-

MPA'S ISO ORACLE'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
3:17-CV-05157-EDL

1  objection was disregarded; JAMS commenced the arbitration.   Dolan Decl. ¶¶ 27, §3, Ex. 12;

2  Dolan Decl. ¶ 33.  The Court subsequently enjoined the arbitration pending determination of the

3  petition to compel class arbitration.  ECF 20.

4  **III.    LEGAL ARGUMENT**

5          A.      <u>The Court Must Decide the Issue of Arbitrability in this Case.</u>

6          "The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are

7  enforced according to their terms.'"   *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344

8  (2011) (quoting *Volt Info. Scis., Inc. v. Bd. of Tr. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478

9  (1989)).   "[W]hether the parties have submitted a particular dispute to arbitration, i.e. the

10  'question of arbitrability,' is 'an issue for judicial determination....'"   *Howsam v. Dean Witter*

11  *Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT&T Techs., Inc. v. Comm. Workers of America*,

12  475 U.S. 643, 649 (1986)).  The party seeking to compel arbitration has the burden to prove an

13  enforceable agreement to arbitrate.  *See Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th

14  Cir. 2014).

15          Questions of arbitrability, which the Supreme Court has labeled "gateway" issues, are

16  ones that the "contracting parties would likely have expected a court to have decided" regarding

17  foundational questions about contract formation and scope and "are not likely to have thought  .  .

18  .  that an arbitrator would" determine.  *Howsam*, 537 U.S. at 83. "[A] gateway dispute about

19  whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a

20  court to decide." *Id.* at 84.   Examples of such gateway issues were described in *BG Group v.*

21  *Republic of Argentina*, 134 S. Ct. 1198, 1206 (2014):

22              On the one hand, courts presume that the parties internal courts,
              not arbitrator to decide what we have called disputes about
23              "arbitrability."   These include questions such as "whether the
              parties are bound by a given arbitration clause" or "whether an
24              arbitration clause in a concededly binding contract applies to a
              particular type of controversy." *Howsam v. Dean Witter Reynolds,*
25              *Inc.*, 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002);
              accord, *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 299-300,
26              130 S.Ct. 2847, 177 L.Ed.2d 567 (2010) (disputes over "formation
27              of the parties' arbitration agreement" and "its enforceability or
              applicability to the dispute at issue are matters . . . the court must

28

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-5-

MPA'S ISO ORACLE'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
3:17-CV-05157-EDL

1  resolve" (internal quotation marks omitted)).

2  *BG Group, PLC v. Republic of Argentina*, 134 S. Ct. at 1206.[1]

3       1.      **The question which agreement applies is a substantive gateway arbitrability issue for the court to determine.**

4

5       A central role of the court under the FAA is to decide if an enforceable agreement to

6  arbitrate exists. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir.

7  2000). Determination of which of the two competing agreements is the enforceable agreement to

8  arbitrate is encompassed within this fundamental judicial function.

9       Johnson contends that Agreement #1 is the enforceable agreement to arbitrate. Oracle

10  contends that Agreement #2 is the enforceable agreement. Determination of that issue

11  unavoidably encompasses the question "whether the parties are bound by a given arbitration

12  clause." *Howsam* 537 U.S. at 84.

13       The appropriate approach to the issue under the FAA where multiple competing

14  agreements to arbitrate are an issue is reflected in *Mancini v. Western and Southern Life Ins. Co.*,

15  2017 WL 3783910 (S.D. Cal. Aug. 31, 2017). The court faced the question whether it, or an

16  arbitrator, had to decide whether arbitration of PAGA claims could be compelled. The plaintiff

17  had signed six different arbitration agreements. The court began its analysis stating:

18           Since Western has moved to compel arbitration it bears the burden
      to show the parties agreed to arbitrate the claims at issue. *See, e.g.,*
19           *Norcia v. Samsung Telecommunications Am. LLC*, 845 F.3d 1279,
      1283 (9th Cir. 2017). But to decide the "threshold inquiry" of
20           "whether the parties agreed to arbitrate," the Court must first sort
      out which agreements to analyze. *Van Ness Townhouses v. Mar.*
21           *Indus. Corp.*, 862 F.2d 754, 756 (9th Cir. 1988). . . . [A] "gateway
      dispute about whether the parties are bound by a given arbitration
22           clause raises a question of arbitrability for a court to decide." *Id.*
      That's the situation here. The Court must decide which
23           agreements to analyze to determine if the parties agreed to arbitrate
      Mancini's PAGA claim.
24

25

26  *Mancini* 2017 WL 3783410 at *1.

27  _____

28  [1] Johnson makes a distinction between "substantive" and "procedural" questions, with the latter
    allegedly within the jurisdiction of an arbitrator. Oracle discusses her contention on pp. 12-13.

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-6-

MPA'S ISO ORACLE'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
3:17-CV-05157-EDL

1    The court's role in deciding between "competing" agreements in the context of the

2    arbitrability determination was also reflected in *Dasher v. RBC Bank*, 745 F.3d 1111, 1116 (11th

3    Cir. 2014) ("This is essentially a dispute almost whether a 'validly formed… agreement' has been

4    made") and in *Energetics Incorporated v. NewOak Capital Markets, LLC*, 645 F.3d 522 (2nd Cir.

5    2011) ("this case falls within the alternative scenario… where the contracting parties are free to

6    revoke an earlier agreement to arbitrate by executing a subsequent agreement terms of which

7    plainly preclude arbitration").

8    Determining which agreement among alternatives is the enforceable agreement to

9    arbitrate is clearly a judicial function under the FAA.

10   **2.    The terms of the class waiver in Agreement #2 preclude delegation to**
11   **an arbitrator.**

12   The undisputable term in Agreement #2 stating that challenges to enforceability of the

13   class claim waivers may be determined "only by a court of competent jurisdiction and not by an

14   arbitrator" confirm that the question of which agreement applies cannot be delegated.   This

15   dispute is at its core about whether the class action waiver is enforceable.

16   In *AT&T Mobility LLC v. Bernardi*, 2011 WL 5079549 (N.D. Cal. Oct. 26, 2011).   The

17   plaintiff sued to enjoin twenty-four individual arbitrations alleging violation of the Clayton Act.

18   The defendants moved to compel arbitration.   The arbitration agreements with the defendants

19   provided that the parties agreed to arbitrate all claims between them "on an individual basis."

20   The plaintiff argued that the arbitration demands were beyond the scope of the arbitration

21   agreements because they constituted in effect a class arbitration.  *Id.* at *5, 6.   The defendant

22   argued that they were individual claims under the Clayton Act, not class claims.   In concluding

23   that the claims were in effect class claims barred by the parties' agreement the court stated:

24       This is not simply limited to whether the Clayton Act claim is
     arbitrable on its face, but looks to the "dispute" as a whole to
25       determine if it is arbitrable.   The FAA mandates the court to
     determine whether the arbitration will proceed "in accordance with
26       the terms of the agreement."  9 U.S.C. § 4; *see also AT&T Mobility*
     *LLC v. Conception*, 131 S.Ct. 1740, 1748, 179 L.Ed.2d 742 (2011).
27       That is why, "[u]nder the FAA, a party to an arbitration agreement
     may petition a [federal] court for an order directing that 'arbitration
28

MPA'S ISO ORACLE'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
3:17-CV-05157-EDL

1

2

3

4

5

> proceed in *the manner provided for in such agreement.' "Stolt-Neilsen S.A. v. Animalfeeds Int'l Corp.*, 130 S.Ct. 1758, 1773, 176 L.Ed.2d 605 (2010) (quoting 9 U.S.C. § 4) (emphasis added). The power of the Court is broader than simply determining whether the Clayton Act dispute is arbitrable, but rather, encompasses whether the dispute demand would proceed within the scope of, and in the manner provided for, in the agreement.

6      *Id.* at *5

7          Looking, as the Court must, at this "dispute as a whole" to determine if Johnson's demand

8      is arbitrable, it must conclude that it is not. This case is about Johnson's contention that the class

9      waiver is not enforceable. While she assiduously avoids saying so, her demand for class

10     arbitration is a challenge to the enforceability of the class waiver in Agreement #2. Under the

11     express terms of Agreement #2, the determination of arbitrability must be made by the Court.

12     Like the defendant in *Bernardi*, Johnson cannot attempt to manipulate the result of the "who

13     decides" question by an overly narrow characterization of the dispute as being about a "limited

14     carve out" for class claims. Her case is about the enforceability of the class waiver; whether it is

15     arbitrable must be determined by the Court.

16

17

### 3.     The reference to JAMS rules is not a clear and unmistakable delegation of authority to arbitrate arbitrability.

18         Parties to an arbitration agreement may by contract dispense with the rule that courts

19     decide questions of arbitrability if they "clearly and unmistakably provide" that the arbitrator

20     should decide those questions. *Howsam*, 537 U.S. at 83 (internal quotation marks omitted).

21     "[P]arties may agree to limit the issues they choose to arbitrate, . . . may agree on rules under

22     which any arbitration will proceed . . . [and] may choose who will resolve specific disputes."

23     *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683 (2010) (citations omitted).

24     "Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and

25     arbitrators must 'give effect to the contractual rights and expectations of the parties.' . . . This is

26     because an arbitrator derives his or her powers from the parties' agreement to forgo the legal

27     process and submit their disputes to private dispute resolution." *Id.* at 682.

28     ///

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-8-

MPA'S ISO ORACLE'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
3:17-CV-05157-EDL

1

2

      a.      **<u>Reference to JAMS Rules does not constitute a clear and unmistakable delegation in this case.</u>**

3           Agreements #1 and #2 provide that both the FAA and JAMS rules govern.[2] The FAA,

4  and the JAMS rule on which Johnson relies differ on who decides arbitrability. *See* Dolan Decl.

5  ¶¶ 39, 41, Exs. 18, 19.  Under the FAA, the arbitrability determination is presumed to be reserved

6  to the court.  The JAMS rule Johnson cites (Rule 11(b)) gives the arbitrator authority to determine

7  arbitrability.  Dolan Decl. ¶ 39, Ex. 18.  A clear an unmistakable delegation cannot be found in

8  such circumstances.

9           In addition, regardless of the reference to the JAMS rules, a clear and unmistakable

10  delegation to an arbitrator cannot be found because the class waiver in Agreement #2 clearly and

11  expressly delegates the decision regarding the enforceability of the class waiver to the court and

12  <u>not</u> to an arbitrator.  This language comports with the FAA and expressly contradicts the JAMS

13  rule.  Accordingly, the circumstances of this case precludes a determination that there has been a

14  clear and unmistakable delegation to an arbitrator. *See Dominic Cobarruviaz, et al. v. Maplebear,*

15  *Inc.*, 143 F.Supp.3d 930, 940 (2015) (conflicting terms in arbitration agreement regarding who

16  determines arbitrability preclude finding of clear and unmistakable delegation).

17           The cases Johnson cites to support her contention of a clear and unmistakable delegation

18  to an arbitrator by virtue of incorporation of particular arbitration rules stand in complete contrast

19  to the facts of this case.  She cites *Oracle v. Myriad Group A.G.*, 724 F3d. 1069 (9th Cir. 2013).

20  However, in *Myriad Group*, a single arbitration agreement clearly incorporated only one set of

21  arbitration rules.  Unlike this case, there was not a contractual provision expressly prohibiting

22  delegation of an arbitrability issue to an arbitrator.  While the *Myriad Group* case may have

23  reflected a clear and unmistakable delegation by virtue of the single agreement and unambiguous

24

25

26

27

28

---

[2] Oracle requests the Court to take judicial notice of JAMS Employment Arbitration Rules & Procedures, Rule 11 and JAMS Class Action Procedures, Rule 1 attached as exhibits 18 and 19, respectively, to the declaration of Brendan Dolan.  Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). *See Fowler v. Wells Fargo Bank, N.A.*, 2011 WL 175506, at *3 (N.D. Cal. Jan. 18, 2011) (Laport, J.) (granting judicial notice).

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-9-

MPA'S ISO ORACLE'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
3:17-CV-05157-EDL

incorporation of one set of arbitration rules, that is not the situation in this case.

Likewise, in *Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2013), the single arbitration agreement at issue had no contractual provision reserving to the Court any aspect of the determination of arbitrability. Instead the AAA Rules, which expressly gave the arbitrator total authority to determine arbitrability were clearly and unambiguously incorporated by reference.

*Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201 (9th Cir. 2016) involved facts entirely distinct from this case. Two drivers brought class and PAGA claims. A 2013 arbitration agreement entered by one of the drivers delegated to the arbitrator determination of all disputes, except for issues related to enforceability of the class and collective action waiver, which was reserved to the court. The second agreement entered by both drivers contained a class waiver and the same broad delegation to the arbitrator as the 2013 agreement, but it did not have the reservation to the court for determination of the enforceability of the class waiver. The district court held that the delegations to the arbitrator in both agreements were not clear and unmistakable due to a venue provision in the agreements believed by the court to be inconsistent. The Ninth Circuit reversed, holding that the 2013 and 2014 Agreements were clear and unmistakable in their delegations to the arbitrator and the reservation of authority in the court. *Id.* at 1208.

*Mohamad* is irrelevant to this case because it did not implicate the threshold issue presented by the facts here. In this case there are two arbitration agreements and a dispute regarding which agreement is the enforceable agreement to arbitrate. In *Mohamad* there was no dispute that both agreements applied. The Ninth Circuit's decision does not address or provide any guidance on how to resolve such an issue where the enforceability of the class waiver is inextricably tied to determination of which agreement governs.

        b.    **JAMS Rules themselves are not a clear and unmistakable delegation of authority to an arbitrator.**

Johnson relies on JAMS Rule 11(b) to support her position that both Agreements #1 and #2 delegate to JAMS exclusive authority to determine the arbitrability of the class arbitration demand.

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-10-

MPA'S ISO ORACLE'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
3:17-CV-05157-EDL

1    However, Rule 11(b) is not the only rule implicated in this matter.  Johnson ignores the

2    significance of the JAMS rules pertaining to class action procedures.  Those rules preclude a

3    finding of a clear and unmistakable delegation to an arbitrator.  They actually defer to the court

4    questions regarding whether a class arbitration can be conducted.

5         JAMS Class Action Rules 1(b) and (c) state:

6              (b)  Subject to Rule 1(a), these class action procedure(s)
7         ("Procedures") shall apply to any dispute arising out of an
          agreement that provides for arbitration pursuant to any of the
8         JAMS arbitration rules where a party submits a dispute to
          arbitration on behalf of or against a class or purported class, and
9         shall supplement any other applicable JAMS rules . . . .

10             (c) Subject to Rule 1(a), where inconsistencies exist between these
          procedures and other JAMS Rules that apply to any dispute, these
11        Procedures shall control . . . .

12   JAMS Rule 11(b) is subordinate to the class action rules.  JAMS class action Rule 1(d)

13   constitutes a broad deferral of authority to the Court;

14             (d) Subject to Rule 1(a), the Arbitrator shall follow any order of a
          Court relating to any matter that would otherwise be decided by an
15        Arbitrator under these Procedures.

16

17   Dolan Decl. ¶ 41; Ex. 19.

18        Further, unlike the JAMS Rule 11(b), in addition to the Rule 1(d) broad deferral to court

19   authority, JAMS Class Action Rule 1(a) delegates to the Court enforcement of a class action

20   waiver:

21             JAMS will not administer a demand for class action arbitration
          when the underlying agreement contains a class preclusion clause,
22        or its equivalent, unless a court orders the matter or a claim to
          arbitration as a class action.
23

24   Dolan Decl. ¶ 41, Ex. 19.

25        Even if the impediments to a finding of a "clear and unmistakable" delegation discussed

26   above were disregarded (*see supra* pp 7-10), the JAMS Rules do not constitute a delegation to an

27   arbitrator, let alone one that is clear and unmistakable.  In the latter circumstance an effective

28   delegation under the FAA cannot be found.

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-11-

MPA'S ISO ORACLE'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
3:17-CV-05157-EDL

Johnson cites the opinions of two JAMS functionaries (General Counsel and case manager) that JAMS had jurisdiction under its rules to compel arbitration. These opinions should be completely disregarded. The JAMS General Counsel and a case manager are not arbitrators. Neither has an adjudicatory role or authority under JAMS rules or the parties' arbitration agreement. Further as is described above, such an interpretation is incorrect.

**4.    Johnson's characterization of this as a "procedural" dispute is wrong.**

Johnson's characterization of this dispute as a "procedural question" for the arbitrator, rather than a question of substantive arbitrability, is wrong.    The procedural/substantive distinction she makes is non-existent in this matter where there is not a single undisputed agreement to arbitrate, a clear and unmistakable delegation to an arbitrator, and where there is an express reservation of authority in the court. The cases she cites do not support her contention that this case presents a "procedural" issue for an arbitrator.

Each case that Johnson cites involves a single arbitration agreement with a broad arbitration clause providing for determination of all disputed issues by the arbitrator. None of the cases present an issue, like this matter, regarding which agreement constituted an enforceable agreement to arbitrate. And, none of the cases reserved authority on any matter for the court. *BG Group, PLC v. Republic of Argentina*, 134 S. Ct. at 1206-1208 (arbitration agreement had broad arbitration clause and reserved no authority to the court); *Green Tree Fin. Corp. v. Bazzle*, 539 U.S 444 (2003) (single arbitration agreement silent on class arbitration and broadly delegated authority to an arbitrator, not the court); *Citigroup, Inc. v. Abu Dhabi Investment Auth.*, 776 F.3d 126 (2d Cir. 2015) (arbitration agreement contained broad delegation of authority to the arbitrator and reserved no authority in the court); *Lee v. JPMorgan Chase & Co.*, 982 F.Supp.2d 1109, 1114 (C.D. Cal. 2013) (broad delegation clause in arbitration agreement and no dispute arbitration agreement had been formed); *Sandquist v. Lebo Automotive Inc.*, 1 Cal. 5th 233, 251-55 (2016) (single agreement to arbitrate had broad arbitration clause and agreement did not address class arbitration).

The material differences in these cases from the circumstances here render irrelevant and inapplicable the decisions Johnson relies on for her procedural/substantive distinction.

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-12-

MPA'S ISO ORACLE'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
3:17-CV-05157-EDL

**B.    Agreement #2 is the Authoritative and Enforceable Arbitration Agreement.**

   **1.    Agreement #2 constituted a novation.**

Johnson and Oracle mutually agreed to Agreement #2 which constituted a novation, superseding Agreement #1 for acceptance. A novation is "a *substitution* by agreement of a new obligation for an existing one, with intent to *extinguish the latter*." *James v. Comcast Corp.*, 2016 WL 4269898 (N.D. Cal. Aug. 15, 2016) (citing 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 961, p. 1052 (Witkin)) (emphasis in original). To establish a novation, a party must establish "four essential requisites: (1) a previous valid obligation; (2) the agreement of all the parties to the new contract; (3) the extinguishment of the old contract; and (4) the validity of the new one." *Id.* (citing *Airs Int'l v. Perfect Scents Distributions.*, 902 F. Supp. 1141, 1147 (N.D. Cal. 1995)). Agreement #2 satisfied each element to constitute a novation.

First, it is undisputed that Agreement #1 was a valid agreement that Johnson accepted on March 1, 2013. Valerian Dec., ¶ 2.

Second, Oracle and Johnson mutually agreed to Agreement #2. Oracle issued Johnson the FY15 Comp Plan via its workflow e-mail process. Once Johnson logged into the compensation planning system and clicked on her FY15 Comp Plan, a webpage containing an electronic version of the FY15 Terms and Conditions (which included Agreement #2) appeared. At the top of the screen, a notice explicitly stated: "***Please Note: In Order to Accept your Compensation Plan, you MUST first read the below Terms and Conditions and Accept at the bottom of the document***". To press the "Accept TC's" button, Johnson had to scroll through every page to get to the bottom of the screen. After doing so, Johnson had access to her FY15 ICP, which included a hyperlink to the Terms and Conditions she just reviewed. The ICP explicitly reaffirmed that accepting the ICP meant she read and agreed to be bound by Agreement #2 (the FY15 Arbitration Agreement in Appendix 9). Johnson electronically accepted the Terms and Conditions and ICP on June 2. Lutz Decl. ¶¶ 4-13, 16, 19, 22-23, Exs. 1-5.[3]

---

[3] Pursuant to the Court's Order to seal (ECF No. 20, n.1) Oracle redacted the last page of Exhibit 5 to the Lutz Declaration. Some redactions were part of the original Oracle document. The redactions pursuant to the Court's order appear as "REDACTED".

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO
-13-
MPA'S ISO ORACLE'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
3:17-CV-05157-EDL

1   These facts demonstrate Oracle offered and Johnson accepted Agreement #2 forming a

2   bilateral agreement. *James*, 2016 WL 4269898; *Tagliabue v. J.C. Penney Corp. Inc.*, 2015 WL

3   8780577, at *4 (E.D. Cal. Dec. 15, 2015) (upholding contract where plaintiff clicked accept to

4   assent); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 911-12 (N.D. Cal. Aug 4, 2011)

5   (finding binding contract where plaintiff reviewed terms of service via hyperlink and pressed "I

6   accept" button) (Laporte, J.).  Johnson's claim that she did not see or read Agreement #2 has no

7   significance under California law. *See id.*

8   Third, Agreement #2 completely extinguished and replaced Agreement #1.  The explicit

9   integration clause in Agreement #2 proves this point:

> "This Agreement to Arbitrate Disputes contains the complete agreement between Oracle and Employee regarding the subject of arbitration, and ***supersedes any and all prior written, oral or other types of representations and agreements*** between Oracle and Employee regarding the subjects of arbitration and dispute resolution."

14   Lutz Decl., ¶ 16, Ex. 2, p. 85 (emphasis added).   This integration clause evidences that both

15   parties intended Agreement #2 to govern. *James,* 2016 WL 4269898 at *3.  In *James*, a consumer

16   received a Welcome Kit and Subscriber Agreement from Comcast in 2003 when he became a

17   customer.  In 2011, Comcast mailed the consumer a new Service Agreement which contained an

18   arbitration provision and an integration clause.   The integration clause stated that the

19   "agreements, including their arbitration provision, replace and supersede any prior agreement for

20   residential services between you and Comcast including any prior provision concerning

21   arbitration." *Id.* at *1.   The Court concluded that the new arbitration provision acted as a

22   novation and extinguished the prior agreement:

> [T]he Court finds that the 2011 Arbitration Provision Notice clearly meant to extinguish the prior agreements. The notice specifically states that the agreements referenced therein, including their arbitration provision, "replace and supersede *any prior agreement* for residential services between you and Comcast including any prior provision concerning arbitration… Any prior agreement you have or had with Comcast terminates on the effective date, and is replaced with these agreements"…[B]y its plain language, the 2011 Arbitration Provision was designed to extinguish the prior

28

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-14-

MPA'S ISO ORACLE'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
3:17-CV-05157-EDL

agreements and leave in place an agreement containing an arbitration agreement.

*Id.* at \*3 (emphasis in original). *See also Greg v. American Mgmt Servs.* 204 Cal. App. 4th 803, 807 (2012).

Irrespective of the integration clause, the surrounding facts and circumstances show that both parties operated under the FY15 Comp Plan, which included Agreement #2; Johnson continued employment and received commissions under it.    Lutz Decl. ¶¶ 11-16, 22-23, Henderson Decl. ¶¶ 3-5.

Finally, Agreement #2 is a valid, stand-alone, bilateral contract, which Johnson agreed to by accepting both the Terms and Conditions and her FY15 ICP. *See James,* 2016 WL 4269898, at \*3 (finding subsequent arbitration provision a stand-alone contract for purpose of a novation); *see also Serafin v. Balco Properties Ltd., LLC,* 235 Cal. App. 4th 165 (2015), review denied (June 10, 2015) (arbitration agreement between employer and employee constitutes a binding contract).    Johnson's assertion that there are no handwritten signatures on Agreement #2 is meritless and irrelevant to finding its validity as a contract.    *See, e.g.*, Cal. Com. Code § 1201(b)(37); Cal. Civ. Code §§ 1633.7(a), (b); *Tagliabue,* 2015 WL 8780577.

Because Agreement #2 satisfies each element, a novation occurred and Agreement #2 superseded Agreement #1.  *Beckwith v. Sheldon*, 165 Cal. 319 (1913) (noting effect of novation is to "cancel[] and obliterate[]" the earlier agreement "as completely as though it had never had existence."); *James,* 2016 WL 4269898, at \*3.[4]

### 2.    Agreement #2 is not an inadequate modification of Agreement #1.

"Whereas a modification of a term or a provision of a contract alters only certain portions of the contract, novation wholly extinguishes the earlier contract." *Fanucchi & Limi Farms v. United Agric. Products*, 414 F.3d 1075, 1081 (9th Cir. 2005).    There is no evidence Oracle purported to modify only certain parts of the Agreement #1.  Rather, Agreement #2 by its own

---

[4] Johnson's claim Oracle violated Labor Code sections 432 and 1198.5 have no bearing on whether Oracle can enforce Agreement #2. Johnson does not contest she signed Agreement #2 and Johnson's counsel has had a copy of Agreement since June 2016.  Dolan Decl. ¶ 7.  Oracle did not even have an obligation to comply with 1198.5.  *See* Cal. Lab. Code §1198.5(n).

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-15-

MPA'S ISO ORACLE'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
3:17-CV-05157-EDL

terms, as well as by law, superseded Agreement #1. *See Crossen v. Foremost-McKesson, Inc.*, 537 F. Supp. 1076 (N.D. Cal. 1982) (provision in later agreement regarding termination superseded provision in prior employment agreement); *Crain v. Burroughs Corp.*, 560 F. Supp. 849, 852 (C.D. Cal. 1983) ("California law further provides that a subsequent written contract supersedes a prior written contract. [citation]. Therefore the employment contract in existence at the time of Plaintiff's termination, by its own terms as well as by law, supersedes all prior contracts between Plaintiff and Burroughs and is dispositive as to the terms and conditions of Plaintiff's employment."); *Eberle v. Smith*, 2007 WL 3151450 (S.D. Cal. Oct. 26, 2007) (in denying motion to compel arbitration, Court found subsequent email exchanges superseded, rather than modified, the original contract).

The cases cited by Johnson might be relevant if Oracle had merely modified Agreement #1; however it did not. *Davis v. Nordstrom, Inc.*, 755 F.3d 1089 (9th Cir. 2014), *Mercuro v. Superior Court*, 96 Cal. App. 4th 167 (2002), and *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778 (9th Cir. 2002) involved situations in which employers were attempting to modify unilaterally promulgated employment policies; the issue in those cases was whether the employers followed their own procedures, not whether an agreement was superseded by a new agreement.

In circumstances similar to this case, the Tenth Circuit rejected the exact "failed modification" argument Johnson is relying on here. In *B-S Steel Of Kansas, Inc. v. Texas Indus., Inc.*, 439 F.3d 653, 661 (10th Cir. 2006), there were two agreements: a 1988 conditions of sale agreement which did not have an arbitration clause and a 1997 agreement, which contained an arbitration clause. *B-S Steel* argued that the 1997 agreement, including the arbitration clause, was invalid because the 1988 agreement prescribed a specific modification procedure that Texas Industries failed to follow. However, the court rejected that argument, noting that the 1997 agreement contained an integration clause. It stated that *B-S Steel*'s argument:

> rests on the idea that because the earlier 1988 Conditions of Sale
> document required the signature of both parties to effect a
> modification, and because the 1997 Conditions of Sale document
> was not signed by Midlothian, the 1997 document was a failed

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-16-

MPA'S ISO ORACLE'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
3:17-CV-05157-EDL

modification of the 1988 document and thus never went into effect. *This argument is flawed because it ignores the prerogative of contracting parties either to waive requirements regarding modification or to substitute an entirely new contract for a previous one*, particularly where the modified or new contract is in writing and is valid in all other respects.

*B-S Steel*, 439 F.3d at 661 (emphasis added).

### 3. Agreement #2 is not unenforceable by virtue of inadequate or unreasonable notice.

Johnson's "notice" argument is fatally flawed because Agreement #2 was a bilateral agreement to arbitrate, not a unilaterally imposed employment policy. While notice might have been required in a unilateral contract context, it was not here because Agreement #2 was for a bilateral agreement.

Johnson conflates two different concepts: unilateral changes to unilaterally-imposed employment policies by employers for which notice is required, and bilateral contracts which employers and employees may mutually enter into at any time. "In a unilateral contract, there is only one promisor, who is under an enforceable legal duty." *Asmus v. Pac. Bell*, 23 Cal. 4th 1, 10 (2000) (citing 1 Corbin on Contracts (1993) § 1.23, p. 87.). "A bilateral contract is one in which there are mutual promises between two parties to the contract; each party being both a promisor and a promisee." *Davis v. Jacoby*, 1 Cal.2d 370, 378 (1934).

Here, both parties promised to arbitrate disputes. Agreement #2 states that: "Employee and Oracle understand and agree that, except as set forth below, any existing or future dispute or claim arising out of or related to Employee's Oracle employment…will be resolved by final and binding arbitration…" This language conveys a mutuality of promises; Oracle and Johnson both agreed to arbitrate disputes arising out of or related to Johnson's employment.

Johnson cites *Davis v. Nordstrom* for the proposition that reasonable notice is required to modify a contract, but, in doing so, misstates the principles set forth by the court. In *Davis*, the employer unilaterally changed the arbitration policy in the employee handbook to preclude class action lawsuits. *Davis v. Nordstrom*, 755 F.3d 1089, 1091 (9th Cir. 2014). The employer sent

Vedder Price (CA), LLP
Attorneys at Law
San Francisco

-17-

MPA'S ISO ORACLE'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
3:17-CV-05157-EDL

1    letters to employees notifying them of the change. *Id.* at 1092.   The court recognized the

2    unilateral nature of this change ("Nordstrom was permitted to *unilaterally* change the terms...")

3    and held that the employer provided "reasonable notice of a change to its employee handbook..."

4    *Id.* at 1093; 1094 (emphasis added).   *Davis* did not involve a bilateral contract offered to

5    employees with the ability for an employee to accept or reject it; rather, it was a change to a

6    unilateral contract.

7         *Asmus v. Pac. Bell*, 23 Cal. 4th 1, 10, 999 P.2d 71 (2000), cited by the court in *Davis*, is

8    similarly inapposite.   That case was about whether an employer could unilaterally terminate an

9    employment security policy.   California courts have recognized the limitations on the reasoning

10   in *Asmus*; it only applies in situations that involve *unilateral* changes to *unilateral* contracts,

11   neither of which is applicable here.   *See Gorlach v. Sports Club Co.*, 209 Cal. App. 4th 1497,

12   1511 (2012).)).

13        The distinction between a unilateral and bilateral agreement to arbitrate was recognized in

14   *Owen v. MBPXL Corp.*, 173 F. Supp. 2d 905 (N.D. Iowa 2001).   There, the court had to

15   determine whether to enforce a Dispute Resolution Plan which included an arbitration

16   requirement.   The parties attempted to argue that unilateral contract analysis, like that in *Davis*,

17   was applicable.   However, the court disagreed, writing that "the handbook analysis is not

18   applicable to this case, because that analysis addresses the existence of a unilateral contract, and

19   the arbitration agreement at issue here is not such a contract." *Id.* at 914.   The court distinguished

20   between bilateral and unilateral contracts and concluded that "the arbitration agreement

21   contemplates a mutual exchange of promises and, therefore, is bilateral." *Id.* 916.   Like the

22   contract between Oracle and Johnson, and unlike the handbook in *Davis*, "the plain language of

23   the agreement clearly envisions an exchange of promises..." *Id.*

24        The notice requirement Johnson seeks to impose is not applicable where, as here, she

25   entered a bilateral agreement with Oracle.   "It cannot be questioned that employers and

26   employees are free to prospectively and *bilaterally* alter the terms of employment. *Schachter v.*

27   *Citigroup, Inc.*, 47 Cal. 4th 610, 620 (2009) (emphasis in original).   Oracle did not "spring" this

28   on Johnson and she cannot now avoid the contract she agreed to simply because she "did not read

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-18-

MPA'S ISO ORACLE'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
3:17-CV-05157-EDL

the entire document." *24 Hour Fitness, Inc. v. Superior Court*, 66 Cal. App. 4th 1199, 1215 (1998) ("'Reasonable diligence requires the reading of a contract before signing it. A party cannot use his own lack of diligence to avoid an arbitration agreement.'").

Finally, even if notice were required, the circumstances under which Oracle presented to Johnson her FY15 Comp Plan constitutes sufficient notice. *See, e.g., Tagliabue*, 2015 WL 8780577, at *4 (finding adequate notice of contract terms where webpage directed plaintiff to click link to arbitration agreement and read before signing); *Swift*, 805 F. Supp. 2d at 912 ("Plaintiff's argument that she was not provided with sufficient notice of the contractual terms she was assenting to because of Zynga's modified clickwrap presentation, and therefore is not bound by any arbitration provision, fails[.]")

### 4. Agreement #2 is not Unconscionable.

#### a. Procedural Unconscionability if Any, is Minimal.

Procedural unconscionability focuses on surprise and oppression. *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1243(2016) (quoting another source.)

Johnson cannot avoid the lawful effect of Agreement #2 by claiming surprise because she did not see, read, or understand its impact. ECF 25 at p. 23; Johnson Decl., ¶ 7; *See Tagliabue*, 2015 WL 8780577, at *4; *Brookwood v. Bank of America*, 45 Cal. App. 4th 1667, 1673-74 (1996). Oracle did not conceal Agreement #2 and the less than two-page FY15 ICP included an express affirmation that she read and agreed to be bound by the Terms and Conditions, including Agreement #2. Lutz Decl., ¶ 13, Ex. 1. There can be no finding of surprise on these facts. *See Tagliabue*, 2015 WL 8780577, at *6.

Similarly, Johnson fails to present sufficient evidence of oppression supporting her procedural unconscionability argument. Characterizing Agreement #2 as adhesive is irrelevant because adhesive contracts are not per se unconscionable. *See, e.g., Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261-62 (9th Cir. 2017); *see Chin v. Boehringer Inelham Pharm., Inc.*, 2017 WL 3977381, at *4-5 (N.D. Cal. Sept. 11, 2017). Further, Oracle did not lie to Johnson, manipulate her, or place her under duress. *See Lutz Decl., ¶¶ 4-12. See, e.g., Baltazar*, 62 Cal. 4th at 1245; *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 914 (2015). Agreement #2

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-19-

MPA'S ISO ORACLE'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
3:17-CV-05157-EDL

1    was part of a bilateral, enforceable contract wherein Oracle promised to provide incentive

2    compensation in consideration for mutual promises which included mutual promises to arbitrate.

3    Johnson's choice to accept Agreement #2 without reading it does not establish oppression. *See,*

4    *e.g., Poublon*, 846 F.3d at 1262-63 (rejecting argument arbitration agreement was oppressive

5    because plaintiff thought signing agreement was required to receive bonuses and remain

6    employed); *see also Chin*, 2017 WL 3977381 (rejecting unconscionability where employees were

7    eligible to earn incentive compensation as consideration for agreeing to arbitrate).   Thus, any

8    showing of procedural unconscionability by Johnson is low.

9                    **b.      There is No Substantive Unconscionability.**

10        To establish substantive unconscionability, Johnson must show that Agreement #2 or the

11   terms contained therein, was so one-sided at the time the contract was made that it "shocks the

12   conscience." *See Sanchez*, 61 Cal. 4th at 910-11 (quoting other sources).   Because procedural

13   unconscionability, if any, is low, Johnson must establish a high degree of substantive

14   unconscionability. *See Poublon*, 846 F.3d at 1263 (quoting another source).   She cannot.

15        Johnson's claim that Agreement #2 is unlawful and unconscionable because it sweeps in

16   "existing claims and disputes" is unfounded.   Section 2 of the FAA permits parties "to submit to

17   arbitration an *existing controversy* arising out of a contract . . . ."  (emphasis added).   Further,

18   courts addressing similar language have found arbitration agreements to be valid, enforceable and

19   not unconscionable. *See, e.g., Hunter v. First Nat'l Bank of Omaha, NA*, 2015 WL 12672151

20   (S.D. Cal. July 31, 2015); *Jefferson Pilot Life Ins. Co. v. Griffin*, 2008 WL 2485598 (M.D.N.C.

21   June 16, 2008); *Harris v. Coldwell Banker Real Estate Corp.*, 2007 WL 2127585 (N.D. Miss.

22   July 23, 2007).   Here, Johnson had the opportunity to read, review and decline to accept

23   Agreement #2.  By accepting Agreement #2, she entered into a new contract, covering the claims

24   at issue in this case.

25        Johnson's citation to *Avery v. Integrated Healthcare Holdings, Inc.*, 218 Cal. App. 4th 50

26   (2013), is unavailing. *Avery* involved a unilateral modification to an existing company handbook

27   (adding a class waiver to the arbitration provision), without providing any notice to the employees

28   (including plaintiffs), after they filed a lawsuit.   Unlike *Avery*, Agreement #2, was not a unilateral

modification, it was a new bilateral contract, requiring Johnson's assent.  Johnson had access to the contract *before* signing it and *before* being subject to its terms; and, there is no question that Agreement #2 was included as Appendix 9, which Johnson accepted.

Johnson's substantive unconscionability argument regarding the temporary equitable relief provision in Agreement #2 also fails.  Johnson mischaracterizes the provision claiming it exempts claims Oracle is more likely to bring in arbitration and that the carve-out is not "reasonably justified" given California Code of Civil Procedure § 1281.8.  ECF 25, p. 23.  The provision in Agreement #2 is not substantively unconscionable because the provision merely recognizes rights permitted by the California Arbitration Act.  *See, e.g., Chin*, 2017 WL 3977381, at *6; *Baltazar*, 62 Cal. 4th at 1247-48.

Johnson's reliance on *Colvin v. NASDAQ OMX Group, Inc.*, 2015 WL 6735292 (N.D. Cal. Nov. 4, 2015) and *Mercuro v. Superior Court*, 96 Cal. App. 4th 167 (2002) is misplaced. The "carve-outs" in those cases excluded from arbitration the types of claims in which injunctive relief and/or other equitable relief was or likely to be sought and removed from arbitration claims the courts assumed the employer would more likely bring.  *See Colvin*, 2015 WL 6735292, at *5; *Mercuro*, 96 Cal. App. 4th at 176-77.  Here, the provision applies equally to both parties (not one-sided in Oracle's favor), includes language that trial on the merits would occur through arbitration, and does not tie the carve-out to specific types of claims, such as intellectual property or unfair competition.

Finally, Johnson's argument that the "existing" claims language, discussed above, and the carve-out provisions are substantively unconscionable is disingenuous.  Johnson asserts that Agreement #1 is substantively identical to Agreement #2 except for the class waiver.  Agreement #1 includes both of these provisions yet she does not contend it is substantively unconscionable.

      c.     <u>The Representative Action Waiver Does Not Invalidate Agreement #2.</u>

Johnson's argument that the representative action waiver is unconscionable under *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 383 (2014) because she characterizes it as waiving a PAGA claim, does not render Agreement #2 unenforceable.  In a similar context,

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-21-

MPA'S ISO ORACLE'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
3:17-CV-05157-EDL

1   the Ninth Circuit found that "the unenforceability of the waiver of a PAGA representative action

2   d[id] not make th[e] provision substantively unconscionable." *Poublon*, 846 F.3d at 1264.

3   Moreover, Johnson is not asserting a PAGA claim, Oracle is not preventing her from pursuing

4   one and Oracle has not used the language to limit any current or former employee's ability to

5   pursue a PAGA action.  Dolan Decl., ¶ 37.  Even if the waiver is unconscionable, any alleged

6   waiver of PAGA "can be limited without affecting the remainder of the agreement." *Id.* at 1273.

7           **d.**    **The Class Waiver Provision Does Not Render Agreement #2**

8                 **Unconscionable.**

9          Johnson's final claim on unconscionability is that the class action waiver violates the

10  NLRA.  Prior to *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016), the Supreme Court

11  and the California Supreme Court rejected claims that a class waiver made an arbitration

12  agreement unconscionable.  *See Concepcion*, 563 U.S. 333; *Sanchez*, 61 Cal. 4th at 923-24.

13          **5.**    **Oracle cannot be judicially estopped from asserting that Agreement #2**

14              **applies.**

15         Judicial estoppel is a "drastic sanction" "to be invoked when a party's inconsistent

16  behavior will otherwise result in a miscarriage of justice." *Norris v. Allied-Sysco Food Servs.,*

17  *Inc.*, 948 F. Supp. 1418, 1447 (N.D. Cal. 1996); *Hersh v. Nat'l Found. Life Ins. Co.*, 2012 WL

18  381173, at *5 (N.D. Cal. Feb. 6, 2012) (Laporte, J.).  "[T]he doctrine is equitable and its

19  application discretionary." *Roberts v. Bartels*, 2013 WL 6173142, at *5 (N.D. Cal. Feb. 19 2013)

20  (Laporte, J.), report and recommendation adopted.  Judicial estoppel is not justified in this case.

21         The elements of judicial estoppel are: (1) "A party's later position must be 'clearly

22  inconsistent' with its earlier position;" (2) "The party must have 'succeeded in persuading a court

23  to accept that party's earlier position;'" (3) "The party seeking to assert an inconsistent position

24  would derive an unfair advantage or impose an unfair detriment on the opposing party if not

25  estopped." *Nada Pac. Corp.*, 73 F. Supp. 3d at 1216–17.

26         First, Oracle has not adopted any "clearly inconsistent" position.  In fact, Oracle did not

27  adopt *any* position with respect to Agreements #1 and #2 in the prior cases cited by Johnson.  For

28  example, in *Wilson*, the Plaintiff initiated arbitration and it was the Plaintiff who asserted that the

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-22-

MPA'S ISO ORACLE'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
3:17-CV-05157-EDL

1    arbitration was governed by the same form as Agreement #1.  Collins Decl. ¶¶ 2-5, Dolan Decl.

2    ¶¶ 33-36.  Neither *Wilson* nor *Gee* involved class claims – those were individual cases.  Dolan

3    Decl. ¶ 33, Collins Decl. ¶ 5.  Under those circumstances the kind of "inconsistency" necessary to

4    support estoppel was not possible.  *See In re Yahoo! Litig.*, 251 F.R.D. 459 (C.D. Cal. 2008)

5    (judicial estoppel not applicable where Yahoo! stipulated to class certification in one case and

6    asserted a class waiver in a later case because the latter case involved "different parties and

7    different claims.").  Oracle took no position on the issue of the class waiver in Agreement #2 in

8    either *Wilson* or *Gee*.

9          Second, Oracle did not persuade a court to accept any position in relation to Agreement #1

10   or #2.  As discussed above, Oracle did not adopt *any* position with respect to the agreements;

11   therefore, Oracle did not *succeed* in persuading a court to accept a position.  Even if Agreement

12   #2 was the applicable in *Gee* or *Wilson*, the result in those matters would have been the same –

13   individual claims would have been arbitrated.  Neither the Court in *Wilson* nor the DLSE in *Gee*

14   did anything in reliance on any distinction between Agreement #1 and #2.

15         Finally, Oracle did not derive an unfair advantage or impose an unfair detriment on

16   Johnson.  Further, because judicial estoppel's purpose is to "protect the courts' integrity, not

17   necessarily the parties' interests," judicial estoppel should not be applied here.  *Roberts*, 2013 WL

18   6173142 at *5.  This case is a far cry from instances where judicial estoppel is appropriately

19   applied to protect the integrity of the court.

20         The required elements for judicial estoppel's factors are not established; this

21   "extraordinary remedy" should not be applied here. *Hersh*, 2012 WL 381173, at *5 (Laporte, J.).[5]

---

22   [5] Judicial estoppel cannot even be considered with respect to the *Gee v. Oracle* informal DLSE
23   conference.  Judicial estoppel does not apply where a forum "lacked the most important hallmark
     – the ability to make a decision." *Nada Pac. Corp. v. Power Eng'g and Mfg., Ltd.*, 73 F. Supp. 3d
24   1206, 1216-17 (N.D. Cal. 2014).  The purpose of an informal DLSE conference is only to
     determine whether the matter will be referred to a formal hearing and "[p]laintiffs are *not
25   required to prove their case...*" DIR Policies and Procedures for Wage Claim Processing,
26   available at https://www.dir.ca.gov/dlse/policies.htm.  Thus, this comes squarely within *Nada
     Pac. Corp.* where "[i]f the...process itself *might not result in a resolution of the dispute*, it
27   certainly cannot be considered to have adjudicated it." *Nada Pac. Corp.* 73 F. Supp. 3d at 1217
     (emphasis added).  The case was never referred to a formal hearing and the file was closed.
28   Dolan Decl. ¶ 35 Ex. 17.

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-23-

MPA'S ISO ORACLE'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
3:17-CV-05157-EDL

C.   **The Declaration of Johnson's Counsel is Objectionable.**

Oracle objects to the declaration of Xinying Valerian in support of Johnson's Motion, and specifically objects that paragraphs 6-20 discussing records Johnson's counsel obtained on Daryl Gee, records for *Oracle v. Wilson* and summary information from JAMS are irrelevant, speculative, inadmissible hearsay, lacking in foundation and the alleged evidence cited therein and appended thereto is improperly authenticated.  ECF No. 26; Fed. R. Evid. 401, 402, 602, 802, 901.  The Court should also reject reliance on the evidence submitted as exhibits to these paragraphs because Johnson failed to request judicial notice.  Furthermore, judicial notice would be improper because the facts are irrelevant and any facts Johnson attempts to assert are subject to reasonable dispute.  Fed. R. Evid. 201.  *See, e.g., Darensburg v. Metro. Trans. Comm'n*, 2006 WL 167657, at *2 (N.D. Cal. Jan 20, 2006) (declining "Defendant's invitation to take judicial notice of the *complex* inferences that Defendant would have it draw from the facts contained in those documents – inferences which Plaintiffs vigorously dispute.") (Laporte, J.); *See also Blye v. Cal. Sup. Ct.*, 2014 WL 295022 (N.D. Cal. Jan. 21, 2014); *Hicks v. Evans*, 2012 WL 398821 (Feb. 7, 2012).

D.   **Discovery Is Not Appropriate.**

Johnson's request that the Court permit it to engage in a fishing expedition to seek other circumstances supporting judicial estoppel should be denied.  There is no basis for such a discovery request.  In the event the court grants her request, Oracle should be given the right to direct discovery at Johnson, including but not limited to taking her deposition.

E.   **The Court Should Stay Its Determination Of The Enforceability Of The Class Waiver Pending The Supreme Court.**

Because Agreement #2 is operative, the critical issue becomes the enforcement of the class waiver.  A stay on determination of that issue is warranted under the factors set out in *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936): "(1) the possible damage which may result from granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-24-

MPA'S ISO ORACLE'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
3:17-CV-05157-EDL

1  stay." *Id.*

2      The damage from granting a stay is nonexistent. *See Guerrero v. Halliburton Energy*

3  *Servs., Inc.*, 2017 WL 3116672, at *7 (E.D. Cal. July 21, 2017).  Because pre-judgment interest is

4  available if her claims proceed and she prevails, Johnson cannot demonstrate harm from a stay.

5      The hardship Oracle would face from being denied a stay is significant.  If no stay is

6  granted and the Supreme Court overturns *Morris*, Oracle will be forced to arbitrate a class case it

7  has no obligation to arbitrate.  The tremendous burden of such class litigation is clear.

8      Finally, the orderly course of justice weighs heavily in favor of a stay.  *McElrath* 2017

9  WL 1175591, at *6.  As in *McElrath*, "[w]hether this case can proceed as a class action turns

10  squarely on the outcome of the Supreme Court's review of *Morris*. Regardless of whether the

11  Supreme Court affirms or overrules *Morris*, the issues before the Court will be simplified." *Id.* at

12  *6.

13      Other courts including the Ninth Circuit, facing this same issue as is presented here have

14  granted a stay.  *O'Connor, et al v. Uber Technologies, Inc.*, No. 3:13-cv-03826-EMC (9th Cir.

15  Sept. 22, 2017)  *McElrath v. Uber Techs., Inc.*, No. 16-CV-07241-JSC, 2017 WL 1175591 (N.D.

16  Cal. Mar. 30, 2017); *Campanelli v. ImageFIRST Healthcare Laundry Specialists, Inc.*, 2017 WL

17  2929450 (N.D. Cal. July 10, 2017); *Guerrero v. Halliburton Energy Servs., Inc.*, 2017 WL

18  3116672 (E.D. Cal. July 21, 2017). *Rodriguez v. Jerome's Furniture Warehouse*, 2017 WL

19  3131845 (S.D. Cal. July 24, 2017).

20  **IV.**   **CONCLUSION**

21      Oracle respectfully urges the Court to determine that it has the authority to determine the

22  arbitrability issue presented here, that Agreement #2 is the enforceable agreement to arbitrate and

23  to defer its ruling on the unenforceability of the class waiver until the forthcoming Supreme Court

24  ruling.

25  Dated: October 17, 2017           VEDDER PRICE (CA), LLP

26

27                     By: /s/ Brendan Dolan
                      Brendan Dolan

28

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-25-

MPA'S ISO ORACLE'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
3:17-CV-05157-EDL